SARAH NICHOLS *vs.* CHARLES ALLEN & another, executors.

Suffolk.  Nov. 19, 1878;  April 5, 1879. — Jan. 12, 1881.  MORTON & SOULE, JJ., absent.

A will, after several bequests to individuals and to charitable corporations, contained the following clause: "After the payment of the foregoing legacies, and all expenses and charges in the settlement of my estate, should there be any surplus, I give and bequeath the same to my executors and the survivor of them, or their successors, if any such should be appointed to administer on my estate, to be by them distributed to such persons, societies or institutions as they may consider most deserving." By a separate clause two persons were appointed executors.  *Held,* that the executors took the bequest in trust; that the trust was not a charitable one, and was too indefinite to be carried into effect; and that the next of kin took by way of resulting trust.

BILL IN EQUITY, alleging that the plaintiff was the first cousin and next of kin of Eliza Powers, whose will, which was duly admitted to probate, after making pecuniary bequests to sundry persons, amounting to $54,000, and to various charitable corporations, amounting to $100,000, contained the following clauses:

" After the payment of the foregoing legacies, and all expenses and charges in the settlement of my estate, should there be any surplus, I give and bequeath the same to my executors and the survivor of them, or their successors, if any such should be appointed to administer on my estate, to be by them distributed to such persons, societies or institutions as they may consider most deserving.

" I give to my executors full power to sell any real estate of which I may die seised, and convey the same by good and suffi cient deeds to the purchasers.

" I hereby nominate and appoint Isaac S. Cruft and Charles Allen, both of said Boston, as the executors of this my last will;

and I direct that they shall not be required to give sureties on their official bonds."

The bill further alleged that the defendants, the persons named in the will as executors, were appointed as such by the Probate Court, and accepted the trust; that, after paying the legacies and the charges and expenses of administration, there remained in the hands of the executors the sum of $68,300, which the executors claimed the right to distribute to such persons, societies or institutions as they considered most deserving, whereas, as the bill charged, the trust was invalid, and void for uncertainty; and that the plaintiff was entitled to the residue as next of kin.

The prayer of the bill was that the trust be declared void, and the defendants ordered to pay said surplus to the plaintiff, and for further relief.

The defendants demurred for want of equity. The case was heard by *Gray*, C. J., on the bill and demurrer, and, at the request of both parties, reserved for the determination of the full court.

The case was argued at the bar, and further arguments were afterwards submitted in writing by leave of the court.

*W. G. Russell & G. Putnam*, for the defendants.

*A. A. Ranney*, for the plaintiff.

GRAY, C. J. Two general rules are well settled: 1st. When a gift or bequest is made in terms clearly manifesting an intention that it shall be taken in trust, and the trust is not sufficiently defined to be carried into effect, the donee or legatee takes the legal title only, and a trust results by implication of law to the donor and his representatives, or to the testator's residuary legatees or next of kin. *Briggs* v. *Penny*, 3 DeG. & Sm. 525, and 3 Macn. & Gord. 546. *Thayer* v. *Wellington*, 9 Allen, 283. *Sheedy* v. *Roach*, 124 Mass. 472. 2d. A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or by class, is too indefinite to be carried out. *Morice* v. *Bishop of Durham*, 9 Ves. 399, and 10 Ves. 521. *James* v. *Allen*, 3 Meriv. 17. *Chamberlain* v. *Stearns*, 111 Mass. 267. The cases illustrating the application of these rules, referred to in the able and elaborate arguments of counsel, are so numerous, and each case

depends so much upon the wording of the particular instrument, that we shall mention those cases only which were most relied on. But it will be convenient first to examine the bequest before us.

The terms of this bequest clearly manifest the intention of the testatrix to create a trust. The bequest contains no words tending to show that the executors are to take the property, or any part of it, absolutely or for their own benefit; and by our law no such intention is to be implied. *Hays* v. *Jackson,* 6 Mass. 149, 152, 153. *Winship* v. *Bass,* 12 Mass. 198, 204. *Nickerson* v. *Bowly,* 8 Met. 424, 431. Story Eq. Jur. § 1208. The bequest is not to the executors by name, but is to them and the survivor of them, and to their successors in the administration of the estate. All the property given to them is "to be by them distributed;" the direction to distribute is as broad as the gift. The property is not "to be disposed of" at the unqualified discretion of the executors, but is "to be distributed" according to their judgment of the deserts of the beneficiaries. The objects of the bounty of the testatrix are not otherwise designated than as "such persons, societies or institutions as they may consider most deserving." And there is no indication of an intention that the executors shall not be held legally accountable for a proper execution of the trust.

The strongest case in favor of the defendants is *Gibbs* v. *Rumsey,* 2 V. & B. 294, in which a bequest to the executors named in the will, "to be disposed of unto such person and persons, and in such manner and form, and in such sum and sums of money, as they in their discretion shall think proper and expedient," was held by Sir William Grant to give the executors a purely arbitrary power of disposition, and consequently a beneficial interest. That case differs from the present one in at least three important particulars: 1st. The bequest was only to the executors named. 2d. Much stress was laid on the fact that the words "in trust" had been used in many other places in the will, and were omitted in this clause. 3d. An authority to those, to whom the legal title is given, "to dispose of" the property "in such manner and in such sums and to such persons as they may think proper," is more consistent with an arbitrary power of disposition than is a direction "to distribute" the

property "to such persons, societies or institutions as they may think most deserving." And the decision in *Gibbs* v. *Rumsey* has always been treated by the English courts as not to be extended beyond its special circumstances.

In *Ralston* v. *Telfair*, 2 Dev. Eq. 255, also, the bequest to executors, which was held by the Supreme Court of North Carolina to be for their own use, was in the less restricted form "to be disposed of as my executors think proper." In the subsequent case of *Green* v. *Collins*, 6 Ired. 139, the same court held that a residuary bequest to the testator's wife, "to be divided among my children as she thinks proper," created a plain trust for the benefit of the children.

Two cases resembling *Gibbs* v. *Rumsey* much more nearly than the present case does were decided by Sir John Leach. One was of a residuary bequest to executors in trust, in default of further directions of the testator, to pay and apply the same to any lawful charitable public purposes, or to any person or persons, and in such shares and proportions, sort, manner and form, as they in their discretion should think fit. *Vezey* v. *Jamson*, 1 Sim. & Stu. 69. The other was of a residuary bequest to executors "upon trust to dispose of the same at such times and for such uses and purposes as they shall think fit, it being my will that the distribution thereof shall be left entirely to their discretion." *Fowler* v. *Garlike*, 1 Russ. & Myl. 232. Each was held to be a plain gift in trust, and therefore not to the executors for their own benefit; but too uncertain for the court to execute, and therefore a resulting trust to the next of kin.

So where a testator gave a fund to his executors upon certain trusts, and declared it to be his will that in the event of the failure of these trusts (which actually happened) his said trustees and the survivor of them, his executors or administrators, should apply the same "to and for such charitable or other purposes as they shall think fit, without being accountable to any person or persons whomsoever for such their disposition thereof," Lord Chancellor Cottenham held that this was a gift in trust, but too uncertain to be carried into effect. He distinguished the case from *Gibbs* v. *Rumsey*, and approved the decision in *Fowler* v. *Garlike*, and made these observations, which are quite applicable to the case before us: "If the fund were intended

for the executors' own benefit, the testator might have left with them the option of disposing of it; but they are to pay and apply it for certain purposes mentioned in the will. Then, again, the direction to the executors to pay and apply the fund to such charitable or other purposes as they should think fit, is very inconsistent with the notion that they were to be absolutely entitled to it." *Ellis* v. *Selby*, 1 Myl. & Cr. 286, 296.

The omission of the words "in trust" is unimportant where, as in the case before us, an intention is clearly manifested that the whole property shall be applied by the legatees for the benefit of others than themselves.

Thus where a sum of money was given to a niece of the testator, "for the express purpose of enabling her to present to either branch of my family any portion of the interest or principal thereon as she may consider the most prudent, and in the event of her death I empower her to dispose of the same by will or deed to those or either branch of her family she may consider most deserving thereof," it was held by Lord Langdale, M. R., and by Lord Cottenham on appeal, that the gift was in trust, but that, the trust being too indefinite to be executed, the sum was part of the donor's general estate. *Stubbs* v. *Sargon*, 2 Keen, 255, and 3 Myl. & Cr. 507.

A like decision was made in *Buckle* v. *Bristow*, 10 Jur. (N. S.) 1095, where a testator, after giving bequests and legacies to several charitable institutions by name, gave the residue of his property upon trust for his executors to hold the same for such uses and purposes as he might by codicil or deed direct or appoint, and, in default thereof, then for the same to be expended and appropriated within three years in such way and amounts and for such purposes as they might in their judgment and discretion agree upon. Vice Chancellor Wood (afterwards Lord Chancellor Hatherley) said that, even if the words "in trust" had been omitted, and the word "appropriated" had been used alone, without the word "expended," the result must have been the same; and that the decision in *Gibbs* v. *Rumsey* went "to the very outside of the doctrine," and "no case would be decided according to it, where the gift is not precisely and distinctly in the words there mentioned." See also *Yeap Cheah Neo* v. *Ong Cheng Neo*, L. R. 6 P. C. 381, 389, 390.

In *McCormick* v. *Grogan*, L. R. 4 H. L. 82, the devise was absolute and unqualified of the testator's whole property to the defendant, whom he described as "my most sincere and valued friend," and appointed sole executor; and the instrument relied on as creating a trust was a letter addressed to the defendant, in which the testator expressed his intentions that certain persons should receive certain sums of money, but, besides otherwise signifying that he left it to the defendant to carry out the intentions as he might think best, said, "I do not wish you to act strictly to the foregoing instructions, but leave it entirely to your own good judgment to do as you think I would if living, and as the parties are deserving; and as it is not my wish that you should say anything about this document, there cannot be any fault found with you by any of the parties should you not act in strict accordance with it." Such was the case of which Lord Hatherley (adopting the words of Lord Justice Christian in the court below) said that, if it were possible to look into the thoughts of the testator when he was inditing the will and letter, he was "persuaded that what we should find there would be a purpose to this effect, to set up after his decease, not an executor or a trustee, but as it were a second self, whom, while he communicates to him confidentially his ideas as to the distribution of his property, he desires to invest with all his own irresponsibility in carrying them into effect." L. R. 4 H. L. 95.

In *Meredith* v. *Heneage*, 1 Sim. 542, a devise of a testator's estate to his wife "unfettered and unlimited, in full confidence and with the firmest persuasion that, in her future disposition and distribution thereof, she will distinguish the heirs of my late father, by devising and bequeathing the whole of my said estate, together and entire, to such of my said father's heirs as she may think best deserves her preference," was held by the House of Lords, upon the advice of Lord Eldon and Lord Redesdale, not to create a trust, because the words "unfettered and unlimited" precluded the inference of such an intention.

In *Lambe* v. *Eames*, L. R. 10 Eq. 267, and L. R. 6 Ch. 597, the bequest was to the testator's wife, "to be at her disposal in any way she may think best for the benefit of herself and family." And several of the other cases cited at the bar were of unsuccessful attempts to impose a trust, by reason of mere

precatory words, upon property bequeathed to a wife or child absolutely and without restriction. *Sale* v. *Moore*, 1 Sim. 534. *Reid* v. *Atkinson*, Ir. R. 5 Eq. 373. *In re Bond*, 4 Ch. D. 238. *Spooner* v. *Lovejoy*, 108 Mass. 529. *Hess* v. *Singler*, 114 Mass. 56. *Sears* v. *Cunningham*, 122 Mass. 538.

In *Stead* v. *Mellor*, 5 Ch. D. 225, the testatrix gave her personal estate to her executors upon trust to convert into money, and, after payment of expenses, debts and legacies, to hold the residue in trust for such of two nieces of hers as should be living at her death, " my desire being that they shall distribute such residue as they think will be most agreeable to my wishes ; " and Sir George Jessel, M. R. held that the nieces took the residue for their own benefit. To have held otherwise would have been to engraft a trust upon a trust, in a case in which, as the Master of the Rolls observed, the testatrix had used the words " in trust " in the gift to the executors only, and beyond that had merely expressed a desire that the nieces should distribute the residue, not " in accordance with my views and wishes," or " as they know will be most agreeable to my wishes," but " as they think will be most agreeable to my wishes."

The decision in *Wells* v. *Doane*, 3 Gray, 201, turned upon the peculiar provisions of the will. The testatrix, after devising and bequeathing the residue of her estate " to my nephew Seth Wells " for life, and at his death to such charities as should be deemed most useful by his executor or administrator, added, " And it is my will and intention that the said Seth Wells may dispose of the furniture, plate, pictures and all other articles now in my house, absolutely, as he may deem expedient, in accordance with my wishes as otherwise communicated by me to him." Taking the two clauses together, the court concluded that they had the same meaning as if the will read thus: " I give all the residue of my property, except the articles in my house, to Seth Wells for life, and I authorize him to dispose of those articles absolutely, as he may deem expedient." It is to be observed that the bequest was to the nephew by name, and not as executor, although he was appointed executor in another part of the will.

The decision in *Wells* v. *Hawes*, 122 Mass. 97, has no bearing upon this case. There the real estate was devised absolutely to

the person named in the will as executor, subject to no trust except so far as a trust might be held to be created by a power given in the will to sell the land if necessary to carry out the purposes of a memorandum left with him by the testatrix; and the only point decided or argued was that, there being no evidence either of such memorandum or of such necessity, a conveyance by him without license from the judge of probate afforded no defence to a real action brought by a creditor of his who had attached and levied upon the land.

Upon a review of the authorities, we find nothing in them to control the conclusion, based upon the intention which appears to us to be clearly manifested on the face of this will, that the executors take the estate, not beneficially, but in trust; and that, the beneficiaries not being described by name or by class, the trust cannot be upheld unless its purposes are such as the law deems charitable.

The trust declared cannot be sustained as a charity. There is no restriction as to the objects of the trust, except that they must be " such persons, societies or institutions as they " (the trustees) " may consider most deserving." "Deserving " denotes worth or merit, without regard to condition or circumstances, and is in no sense of the word limited to persons in need of assistance, or to objects which come within the class of charitable uses.

A bequest for the relief of " deserving poor," or of " indigent but deserving " individuals, is a charitable bequest, not by force of the word " deserving," but in virtue of the word " poor " or " indigent," and would be equally charitable if the word " deserving " had been omitted. *Kendall* v. *Granger*, 5 Beav. 300, 303. So a bequest " for the education of deserving youths " is charitable, because it is for the promotion of education and learning. *Saltonstall* v. *Sanders*, 11 Allen, 446, 454. And, possibly, a bequest for "deserving literary men " might be held upon like grounds to be a charity. *Thompson* v. *Thompson*, 1 Coll. 381, 399.

Bequests for poor relations have been held to be charitable bequests. Boyle on Charities, 31–36, and cases cited. *Gillam* v. *Taylor*, L. R. 16 Eq. 581. *Attorney General* v. *Northumberland*, 7 Ch. D. 745. But for "such relations " of the testator

as are "most deserving" (without "poor" or any equivalent word) is not a charitable use; and includes all relations of the testator within a certain degree, because, as was observed by Sir Joseph Jekyll, M. R., a court of chancery has "no rule of judging of the merits of the testator's relations." *Doyley* v. *Attorney General*, 4 Vin. Ab. Charitable Uses, C, pl. 16; *S. C.* 2 Eq. Cas. Ab. 194, pl. 15; 7 Ves. 58, note. *Harding* v. *Glyn*, 1 Atk. 469. *Burrough* v. *Philcox*, 5 Myl. & Cr. 72, 91, 93. *Salusbury* v. *Denton*, 3 K. & J. 529, 538.

There is a recent English case singularly in point. A testator by his will directed his trustees to pay the following legacies: "To the Cancer Hospital £100; to the Brompton Hospital for Diseases of the Chest £100; to the Lord Mayor of Dublin for the time being £100 for such objects as he shall deem most deserving; to the Blind Asylum New Kent Road £100; to Mrs. Gladstone of No. 11 Carlton House Terrace, to be applied as she thinks proper in charity, £200; and the residue of my estate I bequeath to my trustees for such objects as they consider deserving, whether in increase of the before-mentioned ones or otherwise." Vice Chancellor Wickens, a most accomplished equity judge, held that the bequest to the Mayor of Dublin and the residuary gift could not be held to be limited to charitable objects, but failed altogether, on the ground of uncertainty. *Harris* v. *Du Pasquier*, 26 L. T. (N. S.) 689; *S. C.* 20 Weekly Rep. 668.

The other cases cited by the learned counsel for the defendants have no tendency to support this as a charitable bequest.

The case of *Offley's Charity*, described generally in 1 Cal. Pro. Ch. 216, and in Dwight's Charity Cases, 185, as of legacies "for the benefit of apprentices and other inhabitants of the city of Chester," appears by the 31st Report of the Commissioners of Charities, 385, referred to by Mr. Dwight, to have been of money to be lent from time to time "to twenty-four young men free of the said city of Chester, of honest name and fame, occupied and inhabitants within the said city," twelve of whom to be "such as had served in that city for their freedom as apprentices," and the income derived from such loans to be devoted to poor persons and prisoners in that city, and thus within the very words of the St. of 43 Eliz. *c.* 4, § 1, "for supportation, aid and help of

young tradesmen and handicraftsmen," and for relief of "poor people" and of "prisoners." Duke on Charitable Uses (Bridgm ed.) 1, 131. *Attorney General* v. *Ironmongers' Co.* Coop. Pract. Cas. 283. *Odell* v. *Odell*, 10 Allen, 1, 12. *Jackson* v. *Phillips*, 14 Allen, 539, 569, 570. *In re Prison Charities*, L. R. 16 Eq. 129.

In *West* v. *Knight*, 1 Ch. Cas. 134, in 1669, a bequest to a parish was objected to because it did not say to what use, "whether it were for the poor, or for repair of the church, or highways, &c.," and was upheld by Sir Harbottle Grimstone, M. R., and applied for the benefit of the poor of the parish. But that would seem to have been an application in the discretion of the court to one of several uses, all of which were charitable, in accordance with the rule laid down in an earlier case, published in Tothill twenty years before, that when no use is mentioned it shall be decreed to the use of the poor. *Fisher* v. *Hill*, Toth. 95; (2d ed.) 33; *S. C.* Duke, 484. And a bequest "for the use and benefit of said parish" has always been held in England to be a good charitable bequest. *Attorney General* v. *Hotham*, Turn. & Russ. 209. *Attorney General* v. *Webster*, L. R. 20 Eq. 483.

A gift to "widows and orphans" of a particular sect or parish, or to "widows and children of seamen" of a town, is good, because the words clearly manifest an intention to relieve a class of persons under a common need of assistance, and coming within the spirit, if not within the letter, of the statute of Elizabeth, "relief of aged, impotent and poor people," "maintenance of sick and maimed soldiers and mariners," and "education and preferment of orphans." *Cook* v. *Duckenfield*, 2 Atk. 563. *Powell* v. *Attorney General*, 3 Meriv. 48. *Attorney General* v. *Comber*, 2 Sim. & Stu. 93. And in *Rogers* v. *Thomas*, 2 Keen, 8, in which Lord Langdale sustained a bequest "to the inhabitants of Tawleaven Row in the parish of Sethney," it had been found by a master that the row consisted of seven houses which were entirely occupied by poor fishermen and laborers and their families.

In *Cook* v. *Duckenfield*, 2 Atk. 563, in *Paice* v. *Archbishop of Canterbury*, 14 Ves. 364, and in *Pocock* v. *Attorney General*, 3 Ch. D. 342, the testator plainly manifested his intention to devote his property to charitable uses; in the first case, by the words, "for such charitable uses and purposes as I shall direct

by codicil or otherwise;" in the second case, by the words, "all the remainders of my different bequests I give and bequeath in trust for charitable purposes;" and in the third case, by the words, "to such charitable institutions as I shall by any future codicil give the same;" and each case was decided upon that ground. 2 Atk. 569. 14 Ves 371. 3 Ch. D. 346, 350. *Saltonstall* v. *Sanders*, 11 Allen, 458, 462.

A gift to charitable or public purposes is good. *Dolan* v. *Macdermot*, L. R. 3 Ch. 676. But if the trustees are authorized to apply or distribute it to other purposes or persons, it is void. *Chamberlain* v. *Stearns*, *Vezey* v. *Jamson*, and *Ellis* v. *Selby*, before cited.

The conclusion of the whole matter is, that, the testatrix having given the residue of her property to her executors in trust, and not having defined the trust sufficiently to enable the court to execute it, the plaintiff, being her next of kin, is entitled to the residue by way of resulting trust. *Demurrer overruled.*