WILLIAM MINOT, JR. *vs.* SARAH B. BAKER & others.

Norfolk. March 26, 27, 1888. — July 10, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ

*Will* — *Trust for Charitable Purposes* — *Cy Pres* — *Framing of Scheme
by the Court* — *Presumption.*

A testator, by his will, gave the residue of his estate to his executor, " to be dis-
posed of by him for such charitable purposes as he shall think proper " ; and
the executor died having disposed of only a small portion thereof for such
purposes. *Held,* that the will created a valid trust for charitable purposes, and
that the court would frame a scheme to carry out the trust.

During his life the testator invested a fund in a trust company for the benefit of
a woman, interest to be paid to her for life, with the privilege upon due notice
of capitalizing it, and the principal to be repaid to his executor at her death.
The will, after reciting that provision had been made for her, proceeded, " It is
not my wish or purpose that any investment which I have made or hereafter
may make for her should be disturbed or changed by this will, but I direct that
the same shall remain and be disposed of according to the conditions thereof, in
the same way as though this will had not been made " ; and contained a recom-
mendation that she allow the fund to accumulate to a certain sum before draw-
ing interest. Interest was added to the principal for several years, and she
received interest on the new capital for twenty years thereafter, until her death,
without objection. *Held,* that the entire fund fell into the residue for chari-
table purposes, and that her executor was not entitled to the interest thus
capitalized.

HOLMES, J. This is a bill for instructions, brought by the
administrator *de bonis non*, with the will annexed, of Captain
John Percival. The will appointed John P. Healy executor,
and gave the residue to Healy, " to be disposed of by him for
such charitable purposes as he shall think proper." Healy died,
having disposed of only a small portion of the residuary estate
in his hands for charitable purposes. The first question raised
by the report is, " Whether the sum of $14,503.75, received by
the plaintiff from the suit upon the bond of Healy, as executor
of Percival's estate, and from the suit against Healy's adminis-
trator, should be paid to the next of kin of John Percival, by
reason of the failure of said Healy to dispose of the fund in his
lifetime for the purposes specified in the residuary clause of the
will of said Percival, or should be applied to charitable purposes,
according to a scheme under the direction of the court."

It is settled that the gift to Healy was a good charitable trust. *White* v. *Ditson*, 140 Mass. 351, 353. *Schouler, petitioner*, 134 Mass. 426. *Saltonstall* v. *Sanders*, 11 Allen, 446, 453. *Wells* v. *Doane*, 3 Gray, 201. *Everett* v. *Carr*, 59 Maine, 325. *Pocock* v. *Attorney General*, 3 Ch. D. 342. *Chapman* v. *Brown*, 6 Ves. 404, 410. *Dundee* v. *Morris*, 3 Macq. 134, 158. There was no resulting trust on account of the vagueness of the objects, as there is in cases where the objects are not confined to charities. *Nichols* v. *Allen*, 130 Mass. 211. The first point to be determined, therefore, is a matter of construction, whether the limitation to charities was conditional upon Healy's making an appointment, or whether it should be construed as a gift to charitable uses out and out, with a superadded power to Healy to specify them if he saw fit. And on this part of the question we are of opinion that the gift is an unconditional gift to charitable purposes.

There can be little doubt that such would be the construction adopted by the English courts. *Attorney General* v. *Fletcher*, 5 L. J. Ch. 75, 78. *Pocock* v. *Attorney General, ubi supra*. *Moggridge* v. *Thackwell*, 7 Ves. 36 ; *S. C.* 13 Ves. 416. *Mills* v. *Farmer*, 1 Meriv. 55, 100. *White* v. *White*, 1 Bro. C. C. 12. *Baylis* v. *Attorney General*, 2 Atk. 239. *Attorney General* v. *Hickman*, 2 Eq. Cas. Abr. 193. *Doyley* v. *Attorney General*, 2 Eq. Cas. Abr. 194. *Anon.* Freem. 262 b. *Copinger* v. *Crehane*, Ir. Rep. 11 Eq. 429. Although a different opinion has been intimated in some American cases, at least, where there is a naked power not coupled with a trust. *Fontain* v. *Ravenel*, 17 How. 369, 388, 399 (explained and limited by *Russell* v. *Allen*, 107 U. S. 163, 169). The question must be kept distinct from other questions which do not bear upon the meaning of the words, such as whether a trust for charity generally is valid, or whether a court of equity can and will exercise so general a discretion as is necessary to carry out the trust, etc. If the meaning of the words alone is considered, it appears to be tolerably plain that the English construction is right. The nature of the gift shows that an application of the funds to charity is the dominant object, and that the selection by the trustee is subordinate, or means to an end. It is not like a gift to a particular charity which fails; there the specific object of bounty

or end of the trust may well have furnished the main motive of the testator for giving to charity at all. But to give a power of selection to a party who takes no interest in the fund cannot be supposed to be the main motive of such a trust as we are considering, and the motive of charity goes no further than charity generally, because the testator leaves the rest to his trustee. The testator in such a case says, in effect, I give the fund in trust for charitable purposes, and, to save application to the court, I authorize the trustee to determine the scheme.

In the ordinary case of trusts for such persons of a class as the trustee shall select, when a duty to select is imposed upon the trustee by implication, a general intention to benefit the class is recognized, and the trust will not fail if the trustee accepts it and then fails to make a selection. *Brown* v. *Higgs*, 4 Ves. 708; *S. C.* 5 Ves. 495, and 8 Ves. 561. *Burrough* v. *Philcox*, 5 Myl. & Cr. 72. *Penny* v. *Turner*, 2 Phillips, 493. *Harding* v. *Glyn*, 1 Atk. 469. *Mahon* v. *Savage*, 1 Sch. & Lef. 111. *Spring* v. *Biles*, 1 Sch. & Lef. 113, note; *S. C.* 1 T. R. 435, note. *Salusbury* v. *Denton*, 3 Kay & Johns. 529. *Nichols* v. *Allen*, 130 Mass. 211, 219. *Drew* v. *Wakefield*, 54 Maine, 291.

Here there is a trust, not a mere power, and it was recognized in *White* v. *Ditson*, *ubi supra*, that a duty was imposed upon Healy to act, which is a strong circumstance in favor of the construction that the benefit is not intended to be made dependent upon his acting. *Brown* v. *Higgs*, 8 Ves. 561, 571, 574. *Cole* v. *Wade*, 16 Ves. 27. *Moggridge* v. *Thackwell*, 7 Ves. 36, 82. And it being settled that in some cases you can separate the general intent from the mode of execution, the nature of the gift in the particulars to which we have adverted already seems to us to make the case a stronger one for doing so than where the selection is to be made from relations or the like, as in the decisions cited. At all events, this case is nearer to those than to a gift to such persons as A. may appoint. *Mills* v. *Farmer*, *ubi supra*. For there the limitation is as wide as the world, and if A. does not take the beneficial interest it is impossible to suppose that a gift is intended unless he exercises the power confided to him. But charitable purposes constitute a well-defined class, to which it is entirely conceivable that a testator should make a gift. We shall consider the validity of such a gift in a moment.

The construction of the will being what we have declared, the question arises whether a trust originally valid is to fail for want of a trustee, contrary to the general doctrine of equity. There is no doubt that, if there were a very slight indication of the direction which the testator meant his bounty to take, a court of equity would find itself able to carry out the will. In *Schouler, petitioner, ubi supra,* the gift was for "charitable purposes, masses, etc.," and the court appointed a new trustee. See also *Copinger* v. *Crehane,* Ir. Rep. 11 Eq. 429. But it is argued that when the gift originally is, or through the failure of the first trustee to exercise his discretion afterwards becomes, a gift to charitable uses *simpliciter,* then the disposition of the fund in England was in the king as *parens patriæ,* by the sign manual, and that a court of equity as such has no jurisdiction.

It is to be observed, that the objections to the exercise of the power to frame a scheme in the case supposed are not at all similar to those which apply to a diversion by the sign manual to wholly different uses of property devoted to a specific purpose which fails, because contrary to the policy of the law for instance, as in the well-known case of *Da Costa* v. *De Pas,* 1 Ambler, 228, *S. C.* 2 Swanst. 487, note, where a legacy to establish a Jesuba, or assembly for reading the law and instructing people in the Jewish religion, was devoted to the Foundling Hospital for the instruction of the children in the Christian religion. In such a case there is no pretence, or only a pretence, of carrying out the directions of the testator. His will is arbitrarily overridden. *Moggridge* v. *Thackwell,* 7 Ves. 36, 81. But in a case like the present, whether the machinery used is the sign manual or a scheme prepared under the direction of the court, the testator's wishes are carried out as he has expressed them, just as they might be by the appointment of a trustee, or by the framing of a scheme in those cases where the jurisdiction of the court is admitted.

The only objection on the ground of policy to the court's entertaining jurisdiction which has occurred to us is, that it must choose from too wide a field when there is nothing more specific to guide it than a general direction to apply the fund to charitable purposes. If the objection in this general form were sound, a trust for charitable purposes generally ought to have been held void, whereas all the English cases imply, and express

decisions establish, that it is valid. *Nichols* v. *Allen*, 130 Mass. 211, 221. *Moggridge* v. *Thackwell*, 7 Ves. 36, 80. *Paice* v. *Archbishop of Canterbury*, 14 Ves. 364. *Legge* v. *Asgill*, Turn. & Russ. 265, note. *Dolan* v. *Macdermot*, L. R. 3 Ch. 676. *Pocock* v. *Attorney General*, 3 Ch. D. 342. *Anon.* Freem. Ch. 261, case 330 b. It has been said that "the court never, in trusts or powers, exercises a discretion." *Felan* v. *Russell*, 4 Ir. Eq. 701, 704. But the court has never hesitated to frame a scheme, or to make a choice of the individual beneficiary, when the species of charity was indicated. *Baylis* v. *Attorney General*, 2 Atk. 239. *White* v. *White*, 1 Bro. C. C. 12. *Mills* v. *Farmer*, 1 Meriv. 55 ; *S. C.* 19 Ves. 483. *Attorney General* v. *Gladstone*, 13 Sim. 7. *Gillan* v. *Gillan*, 1 L. R. Ir. 114. And, as is pointed out by Mr. Justice Gray, in *Jackson* v. *Phillips*, 14 Allen, 539, 580, a charity being a trust in which the public is interested, and which is allowed by the law to be perpetual, " deserves and often requires the exercise of a larger discretion by the court of chancery than a mere private trust; for without a large discretionary power, in carrying out the general intent of the donor, to vary the details of administration, and even the mode of application, many charities would fail by change of circumstances," etc. Bearing these considerations in mind, and also that under the English practice there would have been no difference in the execution of the trust, whether by the court or by the sign manual, (*Moggridge* v. *Thackwell*, 7 Ves. 36, 87,) we think that the court would find no insuperable difficulty in selecting the species, as well as the particular object, of the charity.

If this be so, the objections remaining to the jurisdiction are purely historical; that it was not exercised in England, and therefore cannot be exercised here ; that although in England there was a remedy existing alongside of the ordinary jurisdiction of the chancellor, and practically reaching similar results, yet, since this court has not the powers exercised by the sign manual, a will must be defeated, and a trust must fail which this court but for tradition is perfectly competent to carry into effect by machinery which it would have no hesitation in using were the case a hair's breadth different.

If it is possible to avoid such a result, it is desirable to do so, and the historical tradition must be very clear, and the limit

of jurisdiction very well defined, to make it necessary that this court should decline for such arbitrary reasons to enforce a trust which it recognizes as valid. It might be hard to escape from the authorities, if no trust were interposed. *Jackson* v. *Phillips*, 14 Allen, 539, 576. And it is not to be denied that some courts of authority would probably require a specification of the charity, whether there was a trust or not. *Bristol* v. *Bristol*, 53 Conn. 242, 256. *Felan* v. *Russell*, 4 Ir. Eq. 701; *S. C.* Longf. & Towns. 674. *Clifford* v. *Francis*, Freeman, 330. O'Leary, Religious and Charitable Uses, 183. On the other hand, in *Moggridge* v. *Thackwell*, 7 Ves. 36, although there were some words of recommendation in the will, not amounting, however, to a limitation of the generality of the trust (7 Ves. 85, 86), and although the circumstance that some objects were pointed out was adverted to in the discussion, Lord Eldon did sanction the opinion, that, if there is or ever has been a trustee, that is enough to warrant the court in framing a scheme, irrespective of the question whether the testator has pointed out any species of charity or not.

In that case, Lord Eldon said that he doubted whether, if the decree upon the principles attaching to charitable uses must have called upon the trustees, it could be said that, because the trustee is dead, the court is not to make a decree ordering such direction, for no such order could be given to the king executing by sign manual. And again in *Paice* v. *Archbishop of Canterbury*, 14 Ves. 364, 372, he laid it down generally, that, when the bequest is to trustees for charitable purposes, the disposition must be the subject of a scheme before the master; but that, when the object is charity without a trust interposed, it must be by sign manual. See *Down* v. *Worrall*, 1 Myl. & K. 561, 563; *Reeve* v. *Attorney General*, 3 Hare, 191, 197; *Cook* v. *Duckenfield*, 2 Atk. 562, 567, decree stated; *Moggridge* v. *Thackwell*, 7 Ves. 36, 83, 84; Boyle, Charities, 239. In the Anonymous case, Freem. Ch. 261, " it was said, and not denied, that if a man deviseth a sum of money to such charitable uses, as he shall direct by a codicil to be annexed to his will, or by a note in writing; and afterwards leaves no direction, neither by note nor codicil, the Court of Chancery hath power to dispose of it to such charitable uses as the Court shall think fit." *Mills* v. *Farmer*, 1 Meriv. 55, 59, 95.

We do not propose to inquire very curiously whether Lord Eldon's view in the latter case before him is historically accurate or not. It is a view which certainly goes no further than some of the earliest cases, and which it is necessary to adopt in this country to prevent a failure of justice. If we acted with less sanction, we should be conforming to the substantive principles of equity by framing an equitable remedy where we recognized an equitable right. We are of opinion that the above mentioned sum of $14,503.75 should be applied to charitable purposes according to a scheme under the direction of the court.

Two other questions are raised by the report, and remain to be considered.

During his life the testator made certain deposits in the Massachusetts Hospital Life Insurance Company through William Sturgis. The Life Company issued policies promising to pay Maria Gassett interest " unless added to the principal sum as provided below," and after her death to pay the amount of the principal sum to Captain Percival, his executors or administrators. The provision in the policy referred to allowed Mrs. Gassett to have the annual " payments added to the principal sum (in order to increase said principal sum)," giving the company sixty days' notice. Interest was capitalized annually by the company on these policies, from their dates in 1851 and 1852 through January 1, 1863, and the amount of the interest and the former capital added was indorsed on the policy, under the head, " New Capital, being the principal sum with the successive accumulations of interest." It is alleged, and admitted in the pleadings, that this was done at Mrs. Gassett's election, and in pursuance of the agreement in the policies. An express direction on her part was not proved, but it appears that Mrs. Gassett received interest on the new capital for over twenty years, until her death, and never objected to the additions or demanded the interest which had been capitalized.

Captain Percival by his will stated that he had made provision for Mrs. Gassett, and proceeded, " It is not my wish that any investment which I have made, or hereafter may make for her, should be disturbed or changed by this will, but I direct that the sum shall remain and be disposed of according to the conditions thereof, in the same way as though this will had not been made.

I advise," etc. Mrs. Gassett died in 1887. The plaintiff has collected the amount due on the policies, and the further questions raised are whether these amounts are to go to the next of kin, as if the will had not been made, or go to charity, as part of the residue ; and also whether Mrs. Gassett's executor is entitled to a portion of the sums collected equal to the amount of interest added to the original capital, as we have described.

On the former question it is argued that the testator meant, by the language which we have quoted, to withdraw the whole investment in the Hospital Life Company from the operation of his will. If that was not his intention, the clause has no effect, since, of course, Captain Percival could not disturb by his will Mrs. Gassett's vested life interest under the policies. But the words used apply to " any investment " which the testator may make in the future, as well as to those which he has made in the past, and they apply only to investments " for her," and to nothing else. We cannot limit their meaning to a specific reference to the investments in the Hospital Life Company as a whole, nor extend it beyond Mrs. Gassett's interest, whatever it may turn out to be in this or that particular fund. We are constrained to hold that Captain Percival's interest in the policies is not excepted from the operation of his will, but is a part of the estate disposed of by it, and must be applied to charitable purposes.

On the last question, as the pleadings stand, and apart from the pleadings in view of Mrs. Gassett's course of conduct while alive, we must assume that the additions of interest to capital were made with her consent, as recommended by Captain Percival in his will, and we must take the additions to have been made absolutely and for all purposes, so that her executor has no claim, but the principal fund as increased goes under the policies to the administrator of Captain Percival, to whom the company paid it. See *In re Curteis' trusts*, L. R. 14 Eq. 217.

*Decree accordingly.*

*E. M. Johnson*, for the plaintiff, read the papers in the case.

*E. H. Bennett*, for nieces of the testator.

*S. H. Phillips*, for the Attorney General.

*C. M. Reed*, for certain next of kin.

*G. F. Tucker*, for the executor of Maria Gassett.