**MILDRED T. BISHOP, Plaintiff**

v.

**COREY BISHOP, GEORGE T. KELLY III,**
**ETHEL MAY PRESSEY BELOW,**
also known as **ETHEL MAY BISHOP,**
**VIRGIN ISLANDS NATIONAL BANK and ETHEL MAY BISHOP,**
as **Administrator C.T.A. of the Estate of Corey Bishop,**
**Defendants**

Civil No. 119 - 1956

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

June 25, 1957

*See, also, 152 F. Supp. 4*

*Same case on appeal, see p. 655, this volume*

HARRY DREIS, ESQ., Charlotte Amalie, Virgin Islands, *for plaintiff*

CROXTON WILLIAMS, ESQ., Charlotte Amalie, Virgin Islands, *for defendant Ethel May Bishop*

MAAS AND BAILEY, Charlotte Amalie, Virgin Islands, *for Virgin Islands National Bank*

MOORE, *Judge*

The complaint herein was filed on June 25, 1956, Harry

Dreis, Esquire, as attorney for plaintiff. Named in the complaint are the following defendants:

(a) Corey Bishop, who filed an appearance and answer, dated September 11, 1956, which states that he "Waives all further notice and as and for his answer to the complaint alleges as follows:" That he "Admits the allegations contained in the complaint, numbered 1, 2, 13 and 17," and states that he "Neither admits nor denies the allegations contained in the other allegations of the complaint."

(b) George T. Kelly III, who was personally served in Orange County, Florida, and who has not appeared or answered in the case.

(c) Ethel May Pressey Below, also known as Ethel May Bishop, who appeared and answered, and who was represented by her attorney, Croxton Williams, Esquire, and participated in the trial of the case.

(d) Corey Bishop died on September 17, 1956, and his estate was substituted as a party defendant with the aforesaid Ethel May Bishop as administratrix.

The subject matter of this litigation is real property located in the Virgin Islands.

The facts of the case are as follows: Prior to 1938, the defendants, Ethel May Pressey Below and Corey Bishop, were husband and wife in the State of New York, and the correct surname of both was "Below." On or about April, 1938, the husband, Below, deserted his wife and daughter and came to the Virgin Islands with the plaintiff whose name was Mildred T. Bishop. He assumed the name of Corey Bishop, and he and the plaintiff lived together in the Virgin Islands as husband and wife under the name of Mr. and Mrs. Corey Bishop from April, 1938 to December, 1954. His wife, Ethel May Below (who now has also assumed the name of Ethel May Bishop) made unsuccessful efforts to find him, and considering him

dead, married again, was later divorced and later married again.

During this period, from 1938 to 1954, Mildred T. Bishop and Corey Bishop, in St. Thomas, worked together, and from their joint efforts, acquired together, as tenants in common, certain lands on the Island of St. John, some of which they subsequently sold, but of which on April 16, 1955, they still owned approximately 55 acres. On that date, they owned, and held title to, the said 55 acres jointly as tenants in common. Some time prior to April 16, 1955, the wife, Ethel May Bishop discovered her husband's whereabouts, and a few days before April 16, 1955, her attorney, the defendant, George T. Kelly III, came to the Virgin Islands and contacted the defendant, Corey Bishop. Thereupon, on April 16, 1955, Corey Bishop came to Mildred T. Bishop with the trust deed in question herein (Corey Bishop and Mildred T. Bishop were then separated) and induced her to sign the same, which instrument names George T. Kelly III as trustee, but contains no cestui que trust or beneficiary. The only evidence in the case of what inducement was made to the plaintiff to get her to sign is the testimony of the plaintiff, who states that Corey Bishop told her that his wife had found him and that the only way to keep his and her names from being dragged through the mud and save their property was to transfer it to a trustee to hold for them; that at the time she signed the trust deed of April 16, 1955, she had no knowledge that the George T. Kelly III, named therein, was his wife's lawyer, but was told that he was a friend who would hold the property for them. This is not denied by George T. Kelly III, defendant herein, who neither appeared, nor answered, nor testified herein. It is also not denied by Corey Bishop in his answer. It is also not denied by Ethel May Bishop in her testimony.

The following instruments have played a part in the

253

arguments in this case, so it would be well to enumerate them in order:

1. Exhibit number 5, trust deed, dated April 16, 1955, in which Corey Bishop and Mildred T. Bishop transferred the land in question to George T. Kelly III as trustee. This trust deed names no cestui que trust or beneficiary, and no terms or conditions of the trust.

2. (Not in evidence.) A certain declaration of trust, made by George T. Kelly III, and dated April 26, 1955, in which he declares that he is holding the said property in trust for Ethel May Bishop for her lifetime, with remainder to her daughter, Rosemary Fallonstein. This was not signed by Mildred T. Bishop. It was the sole act of George T. Kelly III, signed and proclaimed only by George T. Kelly III. Plaintiff alleges this instrument in her complaint, but did not put the same in evidence. The defendants' attorney was asked if he wished to put it in evidence and declined to do so.

3. Exhibit K, dated April 29, 1955, is a settlement agreement between defendants Ethel May Bishop and Corey Bishop, made in New York State, the pertinent part of which is quoted as follows: "That the said husband, in addition to the lands and stocks heretofore conveyed to the said George T. Kelly III, Trustee, does hereby sell, assign, convey, set over, transfer, deed, devise and demise unto the said wife one-half (1/2) of all property, real, personal or mixed, tangible or intangible, of whatsoever kind or nature and wheresoever located, of which he is now possessed, to be hers absolutely. Stock held by the said husband in Antilles Enterprises, Inc., shall be excluded from this agreement. It is the intention of the parties hereto by virtue of this paragraph of this agreement that all the worldly possessions of the said husband, as of the day and date of this agreement, shall be equally divided between these parties, each to own one-half (1/2) as his

254

or her sole or separate property and each of the said parties forever releases and discharges the other from any further or other claim or demand against all property of the other."

This settlement agreement provides that it is "in consideration of this agreement." As stated in the paragraph above that, the wife, Ethel May Bishop, releases any dower rights which she may have had in property sold by Corey Bishop previously, and provides that "It is the essence of this agreement that the parties hereto are about to effect a reconciliation and enter into a resumption of normal marital relationships."

4. Exhibit number 6, dated July 27, 1955. This is an instrument made by Corey Bishop, Ethel May Pressey Below (sometimes known as Ethel May Bishop), Rosemary Fallonstein (sometimes known as Rosemary Fallon), and Leo Fallonstein (sometimes known as Leo Fallon), her husband, and is a very interesting document. It purports to now revoke the trust deed of April 16, 1955, and Corey Bishop as the party of the first part now conveys the property in question in this litigation to the Ethel May Bishop named above as one of the parties of the second part. It does not mention Mildred T. Bishop at all, but states that whereas "Corey Bishop executed and delivered a deed to George T. Kelly III, Trustee," and whereas "The said deed and assignment were executed and delivered to said grantee as trustee and not otherwise," and where the parties named above "now desire to revoke, terminate and cancel the said trust, and to convey, assign and transfer all of the said properties involved in the said trust unto the said Ethel May Bishop, in fee simple and absolutely, free of the said trust and free of all claims, right, title and interests of all of the other parties mentioned in the said trust," and that "Corey Bishop, now in consideration of love and affection and $10 in hand paid herein,

grants, bargains, sells and conveys the property to Ethel May Bishop." It further states "That the said George T. Kelly III, who was formerly the *alleged* (italics mine) trustee of the aforesaid trust was not made a party to this instrument because he claimed no interest, and had no interest in the properties involved." Leo and Rosemary Fallonstein were also designated as parties of the second part, but signed as witnesses. Rosemary Fallonstein is the daughter of Ethel May Bishop, who was designated by the George T. Kelly III in his declaration of trust as the remainderman after her mother, Ethel May Bishop, but this instrument purports to cancel that declaration of trust, and conveys the fee to Ethel May Bishop.

It must be noted that in all of these instruments Mildred T. Bishop was a party to none of them, except the first trust deed to George T. Kelly III, and that the declaration of trust followed ten days later, the settlement agreement three days later, and the cancellation of trust three months later.

Plaintiff has asked for cancellation of all of these instruments. We need here to give attention only to the trust deed of April 16, 1955, for if that instrument is void, as far as Mildred T. Bishop is concerned, all subsequent instruments are also invalid as far as Mildred T. Bishop is concerned, since they stem from the original trust deed of April 16, 1955.

Plaintiff has argued that the trust deed of April 16, 1955 should be canceled as to Mildred T. Bishop for two reasons. First, that her execution of the same was obtained by Corey Bishop by fraud and misrepresentation. Second, that the said trust deed is invalid, since it contained no cestui que trust or beneficiary named by the settlors.

As to the first, we have in evidence the testimony of the plaintiff, and the Court finds upon that testimony

256

that the reason she was induced to convey her interest in the property to George T. Kelly III as trustee by the instrument, in which no beneficiary or cestui que trust was named, was because of the fraudulent or false representations made to her. Further evidence supporting her testimony shows that, at the time she was induced to sign this instrument, she and Corey Bishop were estranged. She was also trying to get Corey Bishop to make over a settlement to her as well as was the other wife. It is therefore not reasonable that while she was trying to get him to make over a settlement to her that she would give up the property, which she already had for him to give to the other wife. Furthermore, Corey Bishop's actions throughout show that he never intended to be fair with either of these two women, and that he betrayed either of them where it suited his purposes. And when he died on September 17, 1956, he left both of them stranded.

Further evidence of the truth of plaintiff's claim is the fact that no beneficiary was named in the instrument which she signed. Defendant Ethel May Bishop's attorney argues that the reason for that omission was that Ethel May Below, or Bishop, had not decided what name she would use. This is weak, however, since the cestui que trust could easily have been described sufficiently to identify her. Furthermore, when her attorney made the declaration of trust soon thereafter, she was named, and she was named in every other instrument not signed by the plaintiff. It is therefore significant that the only instrument in which Ethel May Bishop, or Ethel May Below, is not mentioned by name, is the one plaintiff signed. In all of the others, she is designated as Ethel May Below, or Ethel May Bishop, indiscriminately, or both. In addition, in his answer of September 11th, Corey Bishop does not deny this allegation in the complaint of his misrepresentation and fraud of the plaintiff herein.

■ Defendants' attorney argues that this defendant was a bona fide purchaser for value in that she waived her dower rights in property previously sold by Corey Bishop in consideration of this trust deed, and that therefore any fraud on the part of Corey Bishop cannot affect this deed to Ethel May Bishop. This is not borne out by the evidence. Exhibit K, above, which is a settlement agreement between Corey Bishop and Ethel May Bishop, expresses between them the precise consideration for that waiver of dower to be the transfer by the said Corey Bishop of one-half (1/2) interest in all of his property. It, however, states that the above consideration was "in addition" to this transfer. But Ethel May Bishop knew at the time and had notice that one-half (1/2) of this property in question belonged to Mildred T. Bishop, and that no part of the consideration between herself and her husband went to the said Mildred T. Bishop. Her agent and attorney, George T. Kelly III, well knew that no consideration had been paid to Mildred T. Bishop. He was in St. Thomas at the time this trust deed was obtained from Mildred T. Bishop, and from its language it seems to have been drawn by an attorney, and George T. Kelly III was the only attorney involved. This court has noted the difference in the tone of this trust deed from the tone of exhibit 6, which latter instrument was probably not drawn by any attorney. George T. Kelly III was here to see to it that Corey Bishop obtained this deed from Mildred T. Bishop. He and Corey Bishop went to great lengths not to make a simple quitclaim deed to Ethel May Bishop, for Mildred T. Bishop would then have seen that it was to go to Ethel May Bishop, and they were careful not to put Ethel May Bishop's name into a deed for Mildred T. Bishop to see. George T. Kelly III was Ethel May Bishop's attorney and agent with full power of attorney from her to act fully in her behalf in obtaining the deed,

258

and so acted. Consequently, although he may not have personally made any of the false representations to Mildred T. Bishop, he aided in them and made them possible by keeping Ethel May Bishop's name out of the original trust deed, and by handling the transaction so that her name need not be known until he made his declaration of trust ten days later. He acted as Ethel May Bishop's agent with full power of attorney to act for her. Therefore, his acts became her own acts. She is here attempting to disavow these fraudulent acts of her agent, but to keep all benefits therefrom.

Furthermore, Ethel May Bishop's testimony shows that there were several conferences in Florida between herself, Corey Bishop and her attorney, George T. Kelly III, concerning this matter and what they should do about it. Therefore, she also had actual knowledge of what was being considered and done in the matter by her agent and Corey Bishop, and when he came to St. Thomas, she gave George T. Kelly III full authority to act for her, and he came to St. Thomas for the purpose of obtaining this property.

It seems to have been discussed in Miami, Florida, and decided that, instead of drawing a simple quitclaim deed from Corey and Mildred T. Bishop to Ethel May Bishop, to which Mildred T. Bishop would have objected, that it be handled in this round about manner, to wit. To first obtain Mildred T. Bishop's signature to the instrument of April 16, 1955, by some means without the name of Ethel May Bishop appearing thereon, which would have been noticed by Mildred T. Bishop, but to put in a trustee, then after the trustee obtained it, the property could then by transferred to Ethel May Bishop. It therefore seems almost impossible to see how Ethel May Bishop's attorney and agent could come to St. Thomas and participate in this trust deed with no beneficiary, then later make

a declaration of trust, naming Ethel May Bishop, without having full knowledge of what was being done, to say the least, even it it were not the plan of all three as a result of the Florida conferences. It seems to this court that this manner of handling this transaction, instead of obtaining a simple and straight forward quitclaim deed from Corey Bishop and Mildred T. Bishop to Ethel May Bishop, after the conferences in Florida concerning the matter on the part of all three of them, and George T. Kelly III, her agent and attorney's subsequent presence in the Virgin Islands, sounds of fraud on the part of all concerned. It certainly seems to have been a round about plan to obtain Mildred T. Bishop's signature without disclosing the name of Ethel May Bishop, and thereby obtaining Mildred T. Bishop's half, since she was not a legal wife.

Next, with respect to plaintiff's second argument, to wit: That the trust deed of April 16, 1955, was of no force and effect in that it named no conditions of the trust and named no cestui que trust; this court is in agreement.

Counsel for the defendant argues (without any cited authority) that all the requirements of a trust were supplied and are present in the declaration of trust made by George T. Kelly III, and that since the trustee has stated all of this in his declaration of trust, that this fulfills the requirements in behalf of the settlors, and that it makes no difference that the settlors did not do so in the instrument of April 16, 1955. Also, that these conditions need not be put into the deed of trust; that it is sufficient that they were put in the declaration of trust by the trustee. First, it must be remembered that the declaration of trust, made by the trustee, is not in evidence. However, if we consider the declaration of trust made by the trustee as being in evidence and considering the circumstances of this case outlined above, defendant's

argument is tantamount to saying that the settlors need not express either the conditions of the trust or name the cestui que trust or beneficiaries, but that such discretion may be left to a trustee. In this connection, also, it must be noted that the trustee declared a trust in favor of Ethel May Bishop only for life, with a remainder to Rosemary Fallonstein, while in the document of July 25th (exhibit 6) Corey Bishop, one of the settlors, canceled that and transferred it to Ethel May Bishop in fee, whereas Mildred T. Bishop, the other one of the settlors, testified that it was intended for none of these, but for herself and Corey Bishop. Also, it must be noted that the trust deed of April 16, 1955, (exhibit 5) did not express any of the conditions of a trust, or give to George T. Kelly III the discretion of naming the beneficiaries thereunder. Nor did it give to Corey Bishop and Ethel May Bishop the power to cancel it and take the fee as they attempted to do in the instrument of July 25th (exhibit 6), and that neither of the settlors signed the declaration of trust as made by George T. Kelly III, and neither of them agreed with his disposition of same, to wit: A life interest to Ethel May Bishop, with a remainder to Rosemary Fallonstein. In the instant case, no conditions whatever were set up by the settlors at the time of execution of the deed of trust, and no beneficiary named. Mildred T. Bishop, one of the settlors, never at any time made or signed any other agreement.

■ It seems clear to this Court that to create a valid trust, the beneficiaries of the same must be named by the settlors of the trust. This was not done by the settlors in the instrument of April 16, 1955, the only instrument executed by them.

In Levy v. Levy, 33 N.Y. 97, 107, the principle is clearly stated. There the court said, "If there be a single postulate of the common law established by an unbroken line

of decision, it is that a trust without a certain beneficiary who can claim its enforcement is void, whether good or bad, wise or unwise." See also United States v. Oregon & C. R. Co., C.C., 186 Fed. 861, 863. And in Newhall v. McGill, 69 Ariz. 259, 212 P.2d 764, 766, the court held, "A valid trust must among other things have (1) subject matter that is certain, (2) beneficiaries specifically designated." Thompson on Wills, 2d Ed., see 419, page 36.

■ This failure to state the purpose of the trust and to name the beneficiaries by the settlors in the instrument of April 16, 1955, cannot be cured by the trustee later making a declaration of trust himself, and himself therein naming beneficiaries. Practically all the authorities hold that the trustee does not have that power or discretion to do so. The beneficiaries must be named by the settlors and not the trustee, otherwise uncertainty exists in the instrument conveying the property to the trustee. This rule of uncertainty is clearly stated in 54 Am. Jur. 136 as follows: "Uncertainty exists within the rule and prevents the creation of a valid trust where the trustee can select or change beneficiaries at his absolute discretion." 54 Am. Jur. 136, Wilce v. Van Anden, 248 Ill. 358, 94 N.E. 42; Nichols v. Allen, 130 Mass. 211; Kramer v. Sommers, Tex. Civ. App., 93 S.W.2d 460; In re Long's Estate, 190 Wash. 196, 67 P.2d 331. See also In re Ralston's Estate, 1 Cal. 2d 724, 37 P.2d 76, 96 A.L.R. page 954, which states the same rule as follows: "A trust is not impressed upon the testator's property by provisions in the will stating that the testator gives and bequeaths 'in trust' to a certain person, who is named executor, his entire property, real and personal, and that he gives such person absolute power to dispose of the estate as he may see fit, there being a failure of the trust or the persons to benefit thereby."

This Court is therefore of the opinion that George T. Kelly III, trustee, had no power or authority to designate

the beneficiaries thereunder, but that the trust attempted to be created on April 16, 1955, failed for the reason that the settlors thereof designated no conditions and no beneficiaries, and that the deed of April 16, 1955, is void.

This conveyance by Mildred T. Bishop was intended to be a trust of some kind and not an absolute deed. This is conceded by both parties to this case, and confirmed by the action of George T. Kelly III, trustee, by his purported declaration of April 26, 1955.

Therefore, this Court is of the opinion that the plaintiff herein, Mildred T. Bishop, did not set up a trust of her one-half (1/2) interest in the property involved herein in favor of Ethel May Bishop or Rosemary Fallonstein or anyone else; that the deed of April 16, 1955, is invalid and does not convey her half interest in the same to George T. Kelly III as trustee or otherwise, or to anyone else; and therefore none of the subsequent instruments in any manner conveyed her one-half (1/2) interest, to which said one-half (1/2) interest she is still possessed and entitled.

■ ■ Defendant was allowed to amend her complaint after trial to include the defense of laches, upon her counsel's argument that he wanted that defense only for the purpose of showing the length of time having elapsed between the time plaintiff had notice of the declaration of trust and the time of filing suit as an argument that plaintiff accepted and resigned herself to the transfer. However, the rule supported by the weight of authority is that delay in asserting a right does not of itself constitute laches, 30 C.J.S. Equity, § 116, p. 531. This delay will not bar relief when it has not worked injury, prejudice or disadvantage to defendant or others adversely interested, ibid. 534. Time is not the only element of laches. As long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, 30 C.J.S. Equity, § 116, p. 536.

In view of the above, this Court is of the opinion that plaintiff is entitled to a decree of the following:

1. That the deed of April 16, 1955, signed by Corey Bishop and Mildred T. Bishop is null and void, insofar as it purports to convey the one-half (1/2) interest of Mildred T. Bishop in the property involved.

2. That none of the other instruments above had the effect of conveying her said one-half (1/2) interest in the property involved.

3. That Mildred T. Bishop is Adjudged and Decreed to be the owner of an undivided one-half (1/2) interest in the property involved in this litigation.

Order may be drawn in accordance with this opinion.