GEORGE E. BULLARD & another *vs.* SETH CHANDLER & others.

Suffolk.    April 1, 1889. — June 25, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Instructions to Trustee — Devise — Estate for Life — Public Charity.*

A trustee has the right to ask the court for instructions as to his present duties only, and not as to what they may be in the future.

A testatrix by her will provided, "I give and bequeath to my friend, the Rev. S. C., of S., the sum of five thousand dollars ($5,000) which after his death shall revert to the town afore named strictly on this condition, namely, that said town shall support fairly and permanently a Unitarian clergyman, in which case all interest accruing on above sum shall be used to aid in payment of his salary, failing which it shall revert to my heirs at law." *Held*, that S. C. was entitled to the income only of that sum during his life.

The testatrix provided that the residue of her estate should "constitute a fund, to be well invested, the income from which I desire my sisters to apply to the relief and comfort of the poor and unfortunate whom we have aided in past years, and also to others as their judgment may dictate; it is strictly for private charities, and may be known to them, as I consider it, as 'the James and George fund,'" referring by these names to her deceased sons; and added, "It is the best monument I can erect for them." *Held*, that the gift was a public charity, which was to be administered by private almsgiving for the poor and unfortunate generally.

BILL IN EQUITY, filed December 11, 1886, by the executors of the will of Mary D. Whitney, for instructions. The case was heard before *Field*, J., who reported it for the consideration of the full court, and was as follows.

Mary D. Whitney died on July 15, 1886, and her will, which was dated February 9, 1884, and was duly admitted to probate, named the plaintiffs as executors and trustees, and, besides many gifts to relatives, including her three sisters and the children of a deceased brother and sister, and to friends and servants, contained the following provisions which are alone material:

"Secondly, I give and bequeath to my friend, Rev. Seth Chandler, of Shirley, the sum of five thousand dollars ($5,000), which after his death shall revert to the town afore named strictly on this condition, namely, that said town shall support fairly and permanently a Unitarian clergyman, in which case all interest accruing on above sum shall be used to aid in payment of his salary, failing which it shall revert to my heirs at law."

After the attestation clause of the will was the following, signed by the testatrix:

"In regard to article secondly, I would add, that in case Rev. Seth Chandler should not outlive me, I wish the sum therein named ($5,000) to go direct to the town of Shirley for the purpose and on the conditions therein stated."

"Fourteenthly, after the above willed division of my estate, should there be still property remaining, (to which would be added the legacy or legacies of any person or persons named in article twelfthly not living at the time of my decease,) I wish it to constitute a fund, to be well invested, the income from which I desire my sisters to apply to the relief and comfort of the poor and unfortunate whom we have aided in past years, and also to others as their judgment may dictate. It is strictly for private charities, and may be known to them, as I consider it, as 'the James and George fund.' It is the best monument I can erect for them. If, on the contrary, my property should have shrunk so far as to make it impossible to carry out all the above named plans, I wish my sisters, nephews, and nieces to be paid in full, and the remainder to be divided *pro rata.*"

The instructions requested, as recited in the bill, were:

"First. Whether the plaintiffs should pay $5,000 to Seth Chandler as his absolute property, or whether the bequest was for his life only, and if for life only, whether they were to hold and invest such sum, either as executors or trustees, and pay

the income thereof to him, or whether a trustee was to be appointed so to hold and invest it and pay the income.

" Second. Whether said town of Shirley takes any interest in said sum if it should comply with the conditions specified, or whether said sum shall be paid to the heirs at law or distributees of the testatrix, or fall into the residue as disposed of in the fourteenth clause of said will, or what other legal disposition is to be made of said sum.

" Third. Whether they or trustees appointed by the court were to hold and invest the residue of the testatrix's property under the fourteenth clause, and to pay over only the income thereof to the testatrix's sisters mentioned in such clause, and upon what terms and trusts, if any, or whether the principal of the residue was to be paid to the testatrix's sisters, and upon what terms and trusts, if any; and particularly whether the testatrix's sisters were vested with a power only, or whether a power coupled with a trust in favor of definite *cestuis que trust* was created, or a charitable trust, public or private, or what other legal disposition under the terms of the will the plaintiffs were to make of the residue."

The will was wholly in the handwriting of the testatrix. The executors, after the administration of the estate, would have in their hands a residue of over $125,000 to be disposed of. The testatrix was the widow of George A. Whitney, and had had two children by him; James P. Whitney, who died in September, 1871, at about the age of twenty-four years, and George A. Whitney, who died in November, 1870, at about the age of twenty-two years. At the time of her death she was sixty-eight years of age, and her only heirs at law and next of kin were her three sisters and the children of a deceased brother and sister. The Rev. Seth Chandler is a Unitarian clergyman residing in the town of Shirley, where he was for many years the minister of the First Parish, the only religious society of that denomination in that town. Until 1820 the territorial limits of the parish and of the town were the same. The society owns a meeting-house, and has the benefit of trust funds amounting to $2,450, the income of which it uses in supporting a Unitarian clergyman. The testatrix was a member of this society with her husband, and was greatly interested in its welfare, and had made it numerous gifts.

The testatrix for many years before her death was an invalid, and lived a secluded life. She left her room or house but very little, and saw but few people. Her constant attendants were three servants, or companions, who lived with her and took care of her, and her visitors were mainly confined to her relatives, a business agent, and an intimate friend, a woman, who also attended to minor business and social matters for her. Her gifts of a beneficent nature were always made directly by herself to the recipient, and she would never give through public institutions, and did not believe in them. These gifts of hers were confined strictly to six persons, and were made for her by her sisters or the friend referred to. Five of these persons were legatees under the will, and were elderly women, being either family friends or former servants, and the donations to them were made by her to relieve their necessities. The sixth person was a young man about twenty-four years of age, a confirmed invalid, whom she never saw, who upon being brought to her notice attracted her sympathy because of a fancied resemblance to her deceased sons. He was not in necessitous circumstances, and her gifts to him were such as would minister to his comfort or pleasure.

*H. E. Ware*, for the plaintiffs, read the papers in the case.

*H. C. Bliss*, First Assistant Attorney General, for the Commonwealth.

*A. S. Wheeler*, for Seth Chandler.

*W. H. Atwood*, for the First Parish in Shirley.

*G. G. Pratt*, for the town of Shirley.

*W. G. Russell & J. Willard*, (*S. S. Shaw, G. P. Sanger, Jr., J. O. Shaw, Jr., & M. P. White* with them,) for the heirs at law and next of kin of the testatrix.

DEVENS, J. This is a bill for instructions, filed by the executors of the will of Mary D. Whitney, as to the interpretation to be given to two paragraphs therein, numbered respectively " secondly " and " fourteenthly."

The first of these paragraphs is as follows : " Secondly, I give and bequeath to my friend, Rev. Seth Chandler, of Shirley, the sum of five thousand dollars ($5,000), which after his death shall revert to the town afore named, strictly on this condition, namely, that said town shall support fairly and permanently a

Unitarian clergyman, in which case all interest accruing on above sum shall be used to aid in payment of his salary, failing which it shall revert to my heirs at law."

It is contended on behalf of Mr. Chandler, that he is entitled to have the five thousand dollars paid to him as his absolute estate, upon the ground that the gift to him is absolute in its terms, and that any limitation afterwards is repugnant and void. We are not disposed to question the correctness of the rule, that, where an estate is absolutely given, it cannot be cut down to a less estate by subsequent words inconsistent therewith. *Merrill* v. *Emery,* 10 Pick. 507, 511. *Sherburne* v. *Sischo,* 143 Mass. 439. But in determining whether an absolute estate was given, it is important to consider the whole clause by which it was made, and the other portions of the will. It would hardly be contended that, if the gift to Mr. Chandler had been followed by "during his life," or some similar phrase, that the preceding words, which, if they stood alone, would import an absolute gift, could be separated from their immediate context. The word "revert" is obviously used in the sense of "go" or "pass," and the phrase "which after his death shall revert," etc., states that the sum of five thousand dollars is to go to the town of Shirley after his death, as the pronoun "which" can refer to nothing but this sum. Unless Mr. Chandler's estate therein is limited to his life, this could not possibly happen. Again, the testatrix, after providing for the condition, as she terms it, upon which the sum shall go to the town, adds, "in which case all interest accruing on above sum shall be used to aid in payment of his salary, failing which it shall revert to my heirs at law." By the use of the words "above sum," she provides that the interest on the five thousand dollars shall go to the support of the clergyman, and that, if it shall fail that he is supported, the same sum shall go to her heirs at law, contemplating throughout the whole clause that this sum is to be kept intact, and the income thereof only used by those who may receive the benefit of it. There would certainly be nothing on which the latter portion of the clause could operate, if the contention on behalf of Mr. Chandler is correct. It must be held, not as a limitation subsequently made, and therefore repugnant to the gift, but as a limitation to the gift as made, and thus qualifying and defining it. All to which

Mr. Chandler is entitled, therefore, is the income of the sum of five thousand dollars. *Rogers* v. *American Board of Commissioners*, 5 Allen, 69. Of this sum the testatrix has at his decease undertaken to make an absolute and final disposition. No case is therefore presented such as arises where the first taker is made the owner of a fund subject to a contingent limitation over upon the occurrence of a certain event, where the money is usually paid to him, as it is his and as the contingency may never happen, and where, if there is danger that it will be wasted, proper security may be required or a trustee appointed. The general rule is here applicable, that in bequests of money or personal property for life, with a bequest over, the first legatee takes the interest or income only, and, in the absence of any expressed intention, the property is either paid to a trustee or held by the executor as such. *Hooper* v. *Bradbury*, 133 Mass. 303. The executors are, by the terms of the will, appointed trustees, and as a trust arises in regard to this sum they should hold it as such during the life of Mr. Chandler, properly investing the same and paying him the income thereof.

This is the only inquiry which concerns the immediate and present duty of the executors. The bill further requests instructions as to whether the town of Shirley " takes any interest in said sum if it should comply, with the conditions specified, or whether said sum shall be paid to the heirs at law or distributees of the testatrix, or fall into the residue as disposed of in the fourteenth clause of said will, or what other legal disposition is to be made of said sum." Under this request various questions have been argued before us as to the ultimate disposal of the fund of five thousand dollars. It has been contended on behalf of the town, that it may take this fund and administer the trust, and also that it may receive the fund, and, the " condition" being illegal and impossible of execution by it, may take it discharged of the condition ; and on behalf of the First Parish in Shirley, that the town of Shirley cannot take the property as trustee, and that as the gift is to a public charity it will not be allowed to fail, but the court will frame a scheme to carry out the charitable intent of the testatrix as nearly as possible, appointing a new trustee for this purpose, and the First Parish offers to accept the gift and comply with the conditions on being allowed to add the

income of the fund to its own funds devoted to the same charity. On behalf of the heirs at law and next of kin of the testatrix, it has been urged that the town cannot take on the condition or for the purpose proposed, and that the parish cannot be enabled to take by interpreting the conditional or limited gift of the testatrix as a general gift to promote Unitarian preaching in the town of Shirley, and that therefore at the death of Mr. Chandler the words used by the testatrix, "failing which it shall revert to my heirs at law," will immediately take effect.

It would be premature to discuss these and similar questions before the life interest of Mr. Chandler expires. It has been often held, that one of the principal requisites for the maintenance of a bill for instructions is the fiduciary possession of a fund of which some disposition is required to be made presently. *Putnam* v. *Collamore*, 109 Mass. 509. *Muldoon* v. *Muldoon*, 133 Mass. 111. *Wilbur* v. *Maxam*, 133 Mass. 541. In *Minot* v. *Taylor*, 129 Mass. 160, a testator had devised property in trust to pay the income to A. for life, with remainder to his children for life, and on their death to pay the principal to A.'s grandchildren on their respectively coming of age. At the death of the testator, A. had one child living, who was then unmarried. At the death of A., this child had children living. It was held that the trustee could not ask the instruction of the court on the question whether the devise to the grandchildren was void for remoteness, until the death of A. A trustee has a right to ask the instruction of the court as to his present duties, but not as to what may be his duty in future contingencies. Whether the powers and duties of towns, or of the town of Shirley, will be controlled when the life interest terminates by the same legislation which now prevails, or whether at that time the First Parish in Shirley will occupy the same relation to religious instruction which it now holds, we cannot say. It is highly probable, certainly, that persons other than those represented before us as the heirs at law and next of kin will then be entitled to be heard. For the immediate duty of the trustees, the instruction already given is sufficient.

The fourteenth paragraph of the will is as follows: " Fourteenthly, after the above willed division of my estate, should there be still property remaining, (to which would be added the

legacy or legacies of any person or persons named in article twelfthly not living at the time of my decease,) I wish it to constitute a fund, to be well invested, the income from which I desire my sisters to apply to the relief and comfort of the poor and unfortunate whom we have aided in past years, and also to others as their judgment may dictate. It is strictly for private charities, and may be known to them, as I consider it, as ' the James and George fund.' It is the best monument I can erect for them. If, on the contrary, my property should have shrunk so far as to make it impossible to carry out all the above named plans, I wish my sisters, nephews, and nieces to be paid in full, and the remainder to be divided *pro rata*."

Upon this paragraph, the question on which all subordinate inquiries depend is whether this gift of income to the three sisters is a gift to them of property to be distributed by them for charitable purposes in the legal sense of the term. The question is primarily one of construction, and the important phrase is one as to the meaning of which we cannot be much aided by precedents, on account of the varieties of phraseology. If it was simply the gift of a sum of money, the residue of her estate, the income of which was to be distributed by her sisters solely to the poor and unfortunate, there would be no doubt that it came within the class of public charities, and, if they were unwilling to execute the trust, it might be executed by others. *Minot* v. *Baker*, 147 Mass. 348. It is the contention of the heirs, that this clause provides for the distribution to a class not the proper objects of charity, as well as those who are so, and that thus the whole gift is rendered void. *Nichols* v. *Allen*, 130 Mass. 211, 213. The testatrix provides for a fund to be well invested, the income of which she desires her sisters " to apply to the relief and comfort of the poor and unfortunate." If the sentence had stopped there, it would not have been contended that any but a charitable use could have been made of the fund. They are followed by the words, " whom we have aided in past years, and also to others as their judgment may dictate." It is said that the word " others " means, not merely others than those we have aided in past years, but " others " than " the poor and unfortunate." This is not so natural a construction as that which treats the first clause describing the

beneficiaries together as " the poor and unfortunate," and then dividing them into two classes, those we have aided in past years, and those other than they who are also poor and unfortunate. The word " others," in a clause like this, refers to the last antecedent, unless there is something in the subject matter which requires a different construction. *Cushing* v. *Worrick*, 9 Gray, 382. Its meaning, as thus referred, is " others " than those " whom we have aided," and not " others " than " the poor and unfortunate." It is thus, with its immediate antecedent, " those whom we have aided," brought within the description of the general class, " the poor and unfortunate," to whom the sisters are authorized to distribute the income of the fund which the testatrix has created. Nor do the words " as their judgment may dictate " empower the sisters to give to any outside this class, but only to make their selection within it.

That a gift should be charitable, there must be some benefit to be conferred upon, or duty to be performed towards, the public at large, or some part thereof, or an indefinite class of persons. A bequest for the aid or benefit of defined persons is not a charity, but a trust only, as a gift to be distributed among certain poor families named, or certain persons identified in the bequest. *Thomas* v. *Howell*, L. R. 18 Eq. 198, 209. *Liley* v. *Hey*, 1 Hare, 580. But a gift of a nature such as that of the testatrix does not cease to be a charity because certain persons are named as of the class to be assisted, or even because provision is made that a preference shall be accorded them in the distribution of her bounty. When they are thus provided for as a part of the poor who are to receive the benefit of the donation, its public object and purpose continue, and it is still invested with the character of a public charity.

While there is no bequest of the principal to the sisters in terms, or any words of succession which indicate who is to administer the fund after them, the testatrix provides clearly for the formation of a fund which the whole context of the sentence shows is intended to be permanent in its character. It is to be well invested, and the income is to be applied by them. She speaks of it as the best monument she can erect for her deceased children, and bestows on it their Christian names jointly. There is no bequest of this fund to the sisters, who had been carefully

provided for in other parts of the will, and the payment of whose legacies is guarded by the last clause of the fourteenth paragraph. The trustees appointed by the will are expected to hold it, although there is no express donation to them. To the sisters is given the right first to distribute the income, and through them in the first instance the charitable purpose is to be executed. Although the testatrix does not expressly provide for the appointment of others by whom the income shall be distributed when they shall decease, or if they shall refuse or neglect the duty she has imposed upon them, it cannot be that she expected it would fail. The application of the income of this fund to charity was her dominant object. Having created it, placed it in custody of trustees, confided the distribution of the income to her sisters, devoted to it the residuum of her estate, and left it as a monument to her children, she might well suppose, if her attention was called to the matter, that proper means of executing her purpose could be provided through the medium of the courts, if in any matter of detail her provision therefor was insufficient. The charity intended by the testatrix was clearly specified. If the general object of the bequest is pointed out, or if the testator has fixed the means of doing so by the appointment of trustees with the power of selection vested in them, then the gift must be treated as sufficiently definite for judicial cognizance, and will be carried into effect. *White* v. *Ditson*, 140 Mass. 351, 357.

The use of the words, " It is strictly for private charities," in describing the fund, is relied on as furnishing an argument that the donation of the testatrix is itself a private charity. A gift is charitable where a fund is to be permanently maintained and its income devoted to the relief of the poor and unfortunate, although its distribution is private and to private persons. What the testatrix contemplated was that the mode of administering the charity would be private, and that individuals would receive the benefit of it at the hands of those who administered it, rather than by any distribution of it in a more public manner. The mode in which, as it appears from the evidence, she had in her lifetime distributed the sums given by herself in charity, was to individuals. She always gave directly herself, held this to be the best way, and would never give to public societies. Those

whom she had aided, to whom the allusion is made in the will, are found to have been persons formerly connected with her family, and one person whom she never personally knew, but whose condition or misfortunes had for some reason especially interested her. Her intention is manifested to devote the income of this fund to the general relief of the poor by almsgiving to the needy, individually, through the agency of those who administer it. Each individual immediately receiving assistance may be private, and the charity may be distributed in private, and by a private hand. Such a charity is public and general in its scope and purpose, and becomes definite and private only after the individual objects have been selected. *Saltonstall* v. *Sanders*, 11 Allen, 446. In the general and indefinite character of those who may become beneficiaries of the fund created by the testatrix, this gift is readily distinguishable from that considered in *Kent* v. *Dunham*, 142 Mass. 216, where it was sought to establish as a public charity a gift intended solely for the benefit of the children of the testator and their descendants. In *Saltonstall* v. *Sanders*, *ubi supra*, where the gift was " in aid of objects and purposes of benevolence or charity, public or private," it was held that the words " public or private " must be taken in their natural meaning, and according to the construction given to them in a great majority of similar cases, to indicate the mode of distribution only. The argument for the heirs at law and next of kin, on this point, relies much on the case of *Ommanney* v. *Butcher*, Turn. & Russ. 260, where a testator, after making numerous legacies, added, " In case there is any money remaining, I should wish it to be given in private charity," and it was held that this last bequest was too indefinite to be carried out. This case was carefully examined, compared with previous and subsequent decisions of the English courts, and its authority denied after a full discussion, which it is needless here to repeat, in *Saltonstall* v. *Sanders*, *ubi supra*. There can be no difficulty by the ordinary procedure and methods of a court of chancery in supervising the execution of such a charity, in compelling, when deemed necessary, the rendering of proper accounts, and in providing that those who administer the income of the fund shall devote it in private charity for the relief of the poor and unfortunate.

The result, therefore, is, that the fund created by the fourteenth clause of the will is to be held by the trustees named, and that the income thereof is to be paid to the sisters, to be applied to the relief and comfort of the poor and unfortunate, including those aided theretofore by themselves and the testatrix, in private charities, and as their judgment shall dictate, and that the income will be received by them upon this trust.

*Instructions accordingly.*