GEORGE WHITE, executor, *vs.* MASSACHUSETTS INSTITUTE
OF TECHNOLOGY & others.

Suffolk.    March 23, 24, 1898. — May 18, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Will — Codicil — Revocation — " Donors " construed to mean " Donees " —
Power of Appointment — Deficiency of Assets — Abatement of Legacies —
Interest upon Legacies — Executor as Trustee — Life Estate in Furniture,
etc. — Instructions to Trustee — Gifts to Faithful Servants — Cousins —
Meaning of Legacy.*.

The gift of personal effects, etc. by will is revoked by a gift in the codicil of " the
remainder of articles, not previously disposed of," these words, as there used
and in other portions of the codicil, pointing to a disposition executed by the
testator in his lifetime; and articles not so given away are "the remainder of
articles, not previously disposed of."

A gift by will of " all the rest, residue, and remainder of my estate, real and per-
sonal," is revoked by a codicil disposing of all the testator's personal estate, the
testator leaving no real estate.

A testatrix, by the fifth section of her will, gave, after the death of her husband,
who died first, eighty thousand dollars, " which my father in his will gave me
power to dispose of " to certain legatees. By the second section of her first
codicil she gave " all estate, real and personal, which I have a right to dispose of
by my father's will, or which belongs to me in my own right, which I have not
disposed of by my said will, " to certain legatees, and stated her intention to dis-
pose of all estate she had a right to dispose of, " whether by the will of my father
or which may belong to me." The testatrix left no real estate, and by a second
codicil disposed of all her personal estate, except the eighty thousand dollars
named in the fifth section of the will.   *Held,* that the second section of the first
codicil was revoked *pro tanto* by the second codicil.

The word " donors," in a gift by will of personal articles " to the respective persons
as donors thereof as presents from me," must be regarded as used by mistake
for " donees."

The father of the testator left eighty thousand dollars in trust, the income to be paid
to the testator for life, and gave him a power of disposition over the corpus of the
fund by will. The testator, after directing by the fourth clause of his will that,
if his own residue was not sufficient, this fund should be used to make good any
deficiencies in his mother's charitable legacies, by the fifth clause of his will ap-
pointed a fund, " or so much thereof as may remain after the foregoing provisions
of my will shall have been satisfied, in equal shares to " an Institute and a Mu-
seum, "two institutions established in Boston," etc.   There were no deficiencies
to be made good under the fourth clause, the appointment was not modified by
the codicils, and the second codicil stated that it was not intended to dispose of
any property over which the testator had a power of appointment.   *Held,* that the
whole fund was well appointed to the two institutions; that if the estate of the
testator was insufficient to pay the legacies given in the second codicil, the fund

in question was not to abate proportionately, and that if any interest had ac-- crued since the death of the testator it should follow the fund.

In the case of money, if no trustee is specially named or appointed, the executor is to hold the money in trust and pay the interest only to the person entitled for life.

By article 3 of his codicil a testator gave a table and a chromolithograph absolutely to A. "if living at my decease," and the gift to her daughter M. and other daughters successively was only in case A. was not living at the death of the testator. By article 4 there was a gift over after the decease of A. and her four daughters. By article 5 there was a gift of a clock to A., and at her decease it was to be disposed of in the same way as the table and chromolithograph were given by article 3, and after the decease of A. and her four daughters it was given to two persons successively. By article 6 the testator gave to A., "if living at my decease," various articles. *Held*, that A., who died after the testator, took only a life interest in the table and chromolithograph; that her daughters were to take successive life interests at her death, the articles to be first handed to M., that being the rule as to chattels of this sort; that the clock was to be disposed of in the same way; and that the things named in article 6 were given to A. absolutely, and were to be delivered to her representatives.

Where articles are given by will to K., and one of them, on her decease, "may be first given to" E., and at her decease to M. and the others, if K. be not living at her decease "shall be given to the eldest daughter of" E., and at the decease of the latter to M., the articles are to be delivered by the executor to K.

This court will not answer a request of a trustee for instructions as to his duties in the future.

The question as to the gift by will of a hundred dollars a year, "should there be one or more persons at my decease but now not known in my employ who may have faithfully served me at home," is answered by the finding that the only persons answering the description are A. and B. The sum will be paid to each of them.

The words in a codicil, "to each of my cousins in the first degree who is not remembered by a legacy from me in my will and codicils — to each of such cousins I give the sum of twenty-five hundred dollars," do not describe first cousins already deceased when the words were used, or the issue of such cousins, and therefore such issue cannot take, whether the testator knew of the death of their ancestor or not, and, in the absence of devise to their ancestor, they are not helped by Pub. Sts. c. 127, § 23; and "legacy" must be held to be "pecuniary legacy," so that cousins to whom bequests of articles of furniture or ornament were made are not "remembered by a legacy" within the meaning of the provision.

BILL IN EQUITY, by the executor of the will of Ann White Dickinson, to obtain the instructions of the court as to the construction thereof and two codicils thereto.

The bill alleged that the testatrix died on or about April 11, 1896, leaving a will and two codicils thereto, which were proved and allowed in the Probate Court for the county of Suffolk on July 23, 1896.

The third section of said will is as follows: "I give all my per-

sonal effects, consisting of my furniture, household utensils, linen and clothing, all my silver and china ware, all my personal ornaments, pictures, paintings, horses, carriages, harnesses, and stable stuff to the executors of my will, or whoever may execute the same, to be given by them to my friends as they shall see fit, but in their disposal of said things I trust they will be governed somewhat by a memorandum of my wishes in such respect which I shall leave with this will."

The fifth section of said will is as follows: "I direct the executors of my will to transfer and pay over, after the death of my husband, the said eighty thousand dollars, which my father in his will gave me power to dispose of, or so much thereof as may remain after the foregoing provisions of my will shall have been satisfied, in equal shares, to the Massachusetts Institute of Technology and the Museum of Fine Arts, two institutions established in Boston, to be held in trust by said institutions, on like terms and conditions, in all respects, as the legacies given to said institutions by my mother, the late Ann White Vose, by her will."

The will was executed on December 23, 1876.

The husband of Ann White Dickinson died before her. It will not be necessary to appropriate any of said fund of eighty thousand dollars to any of the "foregoing provisions" of her will, above referred to.

The sixth section of said will is as follows: "All the rest, residue, and remainder of my estate, real and personal, of which I shall die seised and possessed, or to which I shall be entitled, at my death, whether as devisee, legatee, heir at law, or next of kin of my father, or however otherwise entitled, I give, bequeath, and devise to the trustees of the residuary estate of my mother, the late Ann White Vose, under her will, in trust, nevertheless, to hold, manage, and dispose of in like manner, as if it were a part of her residuary estate."

The second section of the first codicil to said will is as follows: "All estate, real and personal, which I have a right to dispose of by my father's will, or which belongs to me in my own right, which I have not disposed of by my said will, I give and devise to the twenty-two legatees, designated as legatees or donees by my mother, Ann White Vose, in her will, in that part thereof

wherein she executed the power given to her in her husband's will (the late Josiah Vose) beginning with the Massachusetts General Hospital and ending with and including the twenty-second, 'the Home for Aged Women,' not in equal shares, but proportionately to said legatees thus given or designated by my mother.   I make this provision for the reason that the residuary section or provision of my will may fail to have effect for some legal reason or cause, and it being my intention by this clause to make a disposition of all estate which I have a right to dispose of, whether by the will of my father or which may belong to me."

Said codicil was executed on September 16, 1884.

Another codicil, entitled " Memorandum," was executed on June 10, 1895.

The preamble of said last named codicil is as follows : " I, Ann White Dickinson, wife of George Dickinson, deceased, of Boston, county of Suffolk, do hereby give the remainder of articles, not previously disposed of, and declare that it is my will, or whoever may execute the same, shall deliver the articles of money, furniture, paintings, wearing apparel, personal articles, plate, carriages, horses, harnesses, and all other articles of a like nature hereinafter mentioned, to the respective persons as donors thereof as presents from me."

The third section of the codicil is as follows : " To my cousin, Abby W. Hale, I give the sum of five thousand dollars, and at her decease the amount shall be given equally to her two unmarried daughters, Mary and Katy, and at the decease of one of said daughters the full amount shall be given to the surviving sister; at her decease, the sum given in the first of this clause to my cousin Abby W. Hale shall be divided into two parts and given to the two married daughters, Fanny, Mrs. Baldwin, and Agnes, Mrs. Glidden, and further, if living at my decease, I also give from my father's personal articles the old Vose mahogany table, until their decease, in the possession of my father's parents : also the chromo of Lilacs, the former table and the frame of the latter having been purchased by my father for his parents many long years ago, but should my said cousin Abby not be living at my decease, I direct that the two above named articles shall be first given to my said cousin Abby's eldest unmarried daughter

Mary, at her decease to the next unmarried daughter Katy, and afterwards to the third married daughter Fanny, Mrs. Baldwin, and last of all to the youngest married daughter Agnes, Mrs. Glidden, my wish being that every article formerly belonging to my father shall be cared for and perpetually by one of the members of the 'Vose' family."

The fourth section of the codicil is as follows: "After the decease of my said cousin Abby and her four daughters, I direct that the said old mahogany Vose table, as also the chromo of Lilacs, shall be given to my cousin Isabella Vose."

.   The fifth section of the codicil is as follows: "I direct that the very old high Vose clock, originally owned by my father and purchased by him for his parents, during their natural lives, shall be first given to my cousin Abby W. Hale, and at her decease the said clock shall be disposed of according to directions concerning the old Vose mahogany table and chromo of Lilacs, in clause third of this writing, and after the decease of my said cousin Abby and her four daughters it shall be given to my cousin Isabella Vose first, and at her decease to Mrs. Daniel B. Stedman of Chicago, my cousin, my wish being that every article belonging to my father shall be perpetually cared for [by] one of the Vose family."

The sixth section of the codicil is as follows: "If living at my decease, I give to my cousin Abby W. Hale a part of my parents articles, and a part of my own, as follows.   [Here follows a long list.]   But should my said cousin Abby not be living at my decease, all of the above mentioned articles in this clause may be added and disposed of in like manner as all other articles specified in clause third of this writing."

The eighth section of the codicil is as follows: "The following articles hereinafter mentioned of my parents, I give to my cousin Harriet W. Kennedy, if living at my decease, namely: a very old rather small white porcelain cologne stand, mounted with gilt, also flowers painted on the four sides of the bottle, . . . and concerning the white cologne stand, at the decease of my said cousin Harriet it may be first given to my cousin's eldest daughter Edith, at her decease to Mildred, second daughter of my cousin."

The ninth section of the codicil is as follows: "To my cousin

Harriet W. Kennedy, I give one of my own convex mirrors, now placed above the front parlor mantle piece, but if not living at my decease, it shall be given to the eldest daughter of my said cousin Edith, at the decease of the latter it shall be given to the second remaining daughter Mildred. I also give to my cousin Harriet my choice small light blue French porcelain placque hoping at some time it may be ornamented with a rich crimson plush panel and suitably wide gilt frame, and still further, in addition to the above, I give her my large oil painting of 'Aurora,' and subject to the same final disposition as the above named articles in this clause."

The eleventh section of the codicil is as follows: "To my cousin Abby W. Turner, if living at my decease, I give the two coat of arms once owned by Grandmother White, but if not living at my decease they shall be first given to her oldest niece, Alice W. Turner, and at her decease they shall be given to the younger and married sister of the said Alice, namely, Josephine Crawford."

The twenty-second section of the codicil is as follows: "To my friend Mrs. Joshua Lincoln, if living at my decease, I give five thousand dollars, but if not living the said money shall be given to her two sisters, Emily and Susan Macomber, also at the decease of the said Mrs. Lincoln, the above mentioned sum of money shall be paid over to the two or one surviving sisters. I also give to my first named friend in this clause my medium sized oil painting Reading the Love Letter, with additional fifteen dollars towards regilding and varnishing, a set of very dark crêpe cloth curtains, with bedspread to match, at her decease the final disposition to be made in like manner as the sum of five thousand dollars above specified in this clause."

The twenty-third section of the codicil is as follows: "To my friend Miss Emily Macomber I give five thousand dollars, if living at my decease, but if not, the same sum of money shall be given to her sister Susan mentioned in the following clause, my wish being that the sum of ten thousand dollars shall remain undisturbed until after the decease of both sisters, Emily and Susan."

The twenty-fourth section of the codicil is as follows: "To my friend, Miss Susan Macomber, I give five thousand dollars,

but if not living at my decease the said sum of money above donated shall be given to her sister Emily mentioned in the preceding clause, my wish being that the sum of ten thousand dollars shall remain undisturbed until after the decease of both sisters Emily and Susan, the income only being paid."

The thirty-first section of the codicil is as follows: "Should there be one or more persons at my decease but now not known in my employ who may have faithfully served me at home, I give to each and all the sum of one hundred dollars a year, the same amount being paid yearly to any one or more persons living with me at my decease, said yearly gift commencing when they shall have commenced work for me and not continuing over ten years, and farther should I from accident or ill health be incapacitated for every care and effort, I give my executors or whoever may have charge of this writing full power to act according to their best judgment and merits of the case."

The persons serving the testatrix at her home at her decease were Martha Lala Collins, cook, Sarah Ellen O'Brien, housekeeper, and Nancy Elizabeth Brigham, seamstress, who faithfully served her.

The thirty-fifth section of the codicil is as follows: "To an old time friend both of my parents and myself, Mr. Charles H. Hall, if living at my decease, I give five thousand dollars, and at his decease the above said amount shall be paid over to his wife, if living, but if not, the said sum shall be paid to his only daughter Susie."

In a section of the codicil, near the end thereof, appears the following:

"To each of my cousins in the first degree who is not remembered by a legacy from me in my will and codicils — to each of such cousins I give the sum of twenty-five hundred dollars.

"Notwithstanding anything in this codicil stated, I intend only to dispose by this codicil of such property as stands in my individual name and belongs to me outright, and I do not intend by this codicil to dispose of any property over which I have a power of disposal or appointment, either under the will of my father or under the will of my mother."

Other passages, an allusion to which is necessary for the statement of the case, are article fourth of the will: "I direct the

executors . . . to make good from my residuary estate the deficiencies, if any, in the legacies given by my mother . . . to charitable institutions, and should my said residuary estate prove insufficient for that purpose . . . to appropriate to that end the said eighty thousand dollars, or so much thereof as may be necessary, but not, however, until the death of my husband "; article 48 of the second codicil, beginning, " Having disposed of many articles treasured in life, and in the event of not disposing of the few others "; article 1, giving a small box " if not previously disposed of "; and article 2, ordering the photographs of her father, mother, and husband to be destroyed " if not previously disposed of."

The father of the testatrix left eighty thousand dollars, to be deposited in the Hospital Life Insurance Company in trust to pay the income to the testatrix for life, and gave her a power of disposition over the corpus of the fund by will. The testatrix, after directing by the fourth clause of her will that if her own residue was not sufficient this fund should be used to make good any deficiencies in the charitable legacies given by the will of her mother, appointed the fund in the fifth clause of the will above given. The will contains the following: " I make no bequest to my relations because my mother in her will made liberal provision for them."

The plaintiff prays for the direction of this court as follows:

" 1. Is the third section in said will revoked by the disposition of the testatrix's personal effects, made by her in the memorandum or codicil dated June 10, 1895?

" 2. Is the sum of eighty thousand dollars, named in the fifth section of said will, a demonstrative legacy of that sum to the Massachusetts Institute of Technology and the Museum of Fine Arts, to be held by them as provided in the will of Ann White Vose, or shall said sum be reduced *pro rata* with other legacies given by the testatrix in the memorandum or codicil dated June 10, 1895, in case the estate of the testatrix shall be insufficient to pay said legacies in full? And what interest shall be paid the legatees ?

" 3. Is the sixth section in said will revoked by the memorandum or codicil dated June 10, 1895 ?

" 4. Is the second section of the first codicil to said will re-

voked by the memorandum or codicil dated June 10, 1895, said testatrix having left no real estate, and said memorandum or codicil of June 10, 1895, having made disposition of all the personal estate of the testatrix, excepting the sum of eighty thousand dollars named in the fifth section of said will? Or is it such a disposition of her whole estate as to defeat the entire memorandum or codicil of June 10, 1895?

" 5. Is there any ' remainder of articles not previously disposed of ' left to be distributed as directed in the preamble to the memorandum or codicil of June 10, 1895?

" 6. Does the word ' donors ' in said preamble refer to the executors or executor of said will? and if not, how is said word ' donors ' to be construed?

" 7. Is the sum of five thousand dollars, given to Abby W. Hale in the third section of said memorandum or codicil of June 10, 1895, and at her decease to be given to her two unmarried daughters, and at the decease of the senior of them to be given to the two married daughters of said Abby W. Hale, a trust fund to be held by the executor until the decease of said two unmarried daughters, or must said sum be paid over to them, the said Mary and Katy Hale? Abby W. Hale has deceased since the decease of the testatrix.

" 8. To whom shall the ' old mahogany Vose table ' be given by the executor? Also the chromo of Lilacs, both mentioned in the third section, and said table being mentioned in the fourth section of said memorandum or codicil of June 10, 1895?

" 9. To whom shall the Vose clock, mentioned in section fifth of said memorandum or codicil of June 10, 1895, be given by the executor?

" 10. To whom shall the various articles mentioned in the sixth section of said memorandum or codicil of June 10, 1895, be given by the executor?

" 11. To whom shall the cologne stand mentioned in the eighth section of said memorandum or codicil of June 10, 1895, be given by the executor?

" 12. To whom shall the various articles mentioned in the ninth section of the memorandum or codicil of June 10, 1895, be given by the executor?

" 13. Is the sum of five thousand dollars, given in the twenty-

second section of said memorandum or codicil of June 10, 1895, to Mrs. Joshua Lincoln, if living at decease of testatrix, but if not living to be given to her two sisters, Emily and Susan Macomber, and at the death of the said Mrs. Lincoln to be paid over to the two or one surviving sister, a trust fund? and if so, how shall the same be held, and to whom paid over?

" 14. Is the sum of five thousand dollars, mentioned in section twenty-third of said memorandum or codicil of June 10, 1895, a trust fund? and if so, how shall the same be held, and to whom paid over?

" 15. Is the sum of five thousand dollars, mentioned in section twenty-fourth of said memorandum or codicil of June 10, 1895, a trust fund? and if so, how shall the same be held, and to whom paid over? Are the two sums of five thousand dollars each, mentioned in said memorandum or codicil in sections twenty-third and twenty-fourth thereof, amounting to ten thousand dollars in the aggregate, to constitute a trust fund, the income of which is to be paid to Emily Macomber and Susan Macomber and the survivor of them? And upon the death of the survivor of them, does said sum of ten thousand dollars become a part of the residuary estate of the testatrix, or shall it be paid to the heirs of said Emily Macomber and Susan Macomber?

" 16. Is the annuity of one hundred dollars per year, mentioned in section thirty-first of said memorandum or codicil of June 10, 1895, to be paid to any person or class of persons other than those actually in the employ of the testatrix at the time of her decease? If so, does the said section give the executor discretion as to whom said annuity shall be paid, and for how long a term to be paid, and what sums to each, and, in case of the death of any of such persons, must anything be paid to the heirs at law or devisees of said person?

" 17. Is the sum of five thousand dollars, given in the thirty-fifth section of said memorandum or codicil to Charles H. Hall, and at his decease to be paid over to his wife, if living, but if not, to be paid over to his daughter Susie, a trust fund to be held by the executor during the life of said Charles H. Hall, and at his decease paid over to his wife, if living, and, if she be not then living, paid over to his daughter Susie? If not, to whom shall the executor pay over said sum?

" 18. Is a bequest to a cousin in the first degree of articles of furniture or ornament, in the will and codicil and memorandum or codicil of June 10, 1895, such a remembrance by a legacy in said will and codicils by the testatrix as to exclude the cousin so remembered from receiving a legacy of twenty-five hundred dollars under the clause in said memorandum or codicil, near the end thereof, giving ' to each of my cousins in the first degree who is not remembered by a legacy from me in my will and codicils, to each of such cousins I give the sum of twenty-five hundred dollars ' ?

" 19. Some of the cousins in the first degree of the testatrix died before said memorandum or codicil of June 10, 1895, was made. Are the children or issue of each cousin in the first degree, so deceased, entitled under said memorandum or codicil to a legacy of twenty-five hundred dollars ?

" The appraised value of the estate left by the testatrix, as per inventory, is $195,452.43."

Hearing before *Holmes*, J., who found various facts, and reserved the case for the consideration of the full court.

*A. Hemenway*, ( *C. T. Duncklee* with him,) for the plaintiff, read the papers in the case.

*A. J. Peters*, for a cousin of the testatrix in the first degree.

*C. E. Grinnell & E. R. Thayer*, for other cousins in the first degree of the testatrix.

*T. N. Perkins*, (*J. C. Gray* with him,) for the Museum of Fine Arts.

*J. Fox*, for the daughters of Abby W. Hale.

*C. R. Darling*, for the children of certain first cousins who died before the date of the second codicil.

HOLMES, J. This is a bill for instructions brought by the executor of the will of Ann White Dickinson. The questions all concern the construction of a second codicil, entitled "Memorandum," which seems to have been drawn without the help of a lawyer, and which raises difficulties of the kind to be expected under such circumstances.

The second codicil begins by declaring that the testatrix gives " the remainder of articles, not previously disposed of, and declare that it is my will, or whoever may execute the same, shall deliver the articles of money, furniture, paintings, wearing ap-

parel, personal articles, plate, carriages, horses, harnesses, and all other articles of a like nature hereinafter mentioned, to the respective persons as donors thereof as presents from me." By the third clause of her will she had given "all my personal effects," enumerated somewhat as above, to her executors, to be given by them to her friends. The first question is whether the second codicil revokes this clause, — or, putting it conversely, whether the second codicil defeats itself at once by the words " not previously disposed of," because the articles as to which it makes elaborate provisions are previously disposed of by the will, and therefore by the terms of the codicil above quoted are excluded from its operation. We are of opinion that the words " not previously disposed of " in the codicil do not refer to a previous disposal by the will. It was the purpose of the codicil to replace the will so far as it went. The words probably refer to a disposition executed by the testatrix in her lifetime. In this sense it is said in article 48 of the same instrument, " Having disposed of many articles treasured in life, and in the event of not disposing of the few others." So in article 1 she gives a small box " if not previously disposed of," and in article 2 orders the photographs of her father, mother, and husband to be destroyed " if not previously disposed of." This last provision most obviously could not refer to a previous disposition by will. The third section of the will is revoked by the second codicil. Our answer to this question also answers the similar question numbered 3, as to the revocation of the sixth or residuary clause of the will by the second codicil, that numbered 4 as to the revocation *pro tanto* of the second clause of the first codicil, and that numbered 5 as to whether there is any "remainder of articles not previously disposed of " left to be distributed by the second codicil.

In answer to the sixth question we are of opinion that the word "donors " is used by mistake for "donees."

The father of the testatrix left eighty thousand dollars to be deposited in the Hospital Life Insurance Company, in trust to pay the income to the testatrix for life, and gave her a power of disposition over the corpus of the fund by will. The testatrix, after directing by the fourth clause of her will that, if her own residue was not sufficient, this fund should be used to make good

any deficiencies in her mother's charitable legacies, by the fifth clause appointed the fund, subject to the foregoing, to the Massachusetts Institute of Technology and the Boston Museum of Fine Arts. There are no deficiencies to be made good under the fourth clause, and the whole fund is well appointed to the two corporations named. This appointment is not modified by the codicils. Indeed, the second is stated not to be intended to dispose of any property over which the testatrix has a power of appointment. The second question put is whether, if the estate of the testatrix is insufficient to pay the legacies given in the second codicil, the fund in question is to abate proportionately. We are of opinion that there should be no such abatement by reason either of any expressed intention or of Pub. Sts. c. 127, §§ 28, 29. The fund is not the property of the testatrix, and should not be applied to her debts until her own property is exhausted. *Fleming* v. *Buchanan*, 3 DeG., M. & G. 976. It is asked also what interest shall be paid to the legatees. We presume that the terms of the original will were followed, and that the fund was identified by deposit in the Hospital Life office. Whether it still is there or what has become of it does not appear. If any interest has accrued since the death of the testatrix, it should follow the fund. No reason appears for allowing more than the actual increase of the fund.

The third article of the second codicil gives five thousand dollars to Abby W. Hale, and at her decease to her two unmarried daughters, — then to the survivor of them, and then to two married daughters. Abby W. Hale has died since the death of the testatrix. The seventh question is whether the fund is to be held by the executor in trust until the death of the two unmarried daughters, or is to be paid over to them. It is settled in this Commonwealth that, in the case of money, if no trustee is specially named or appointed, the executor is to hold the money in trust, and pay the interest only to the person entitled for life. *Field* v. *Hitchcock*, 17 Pick. 182, 183. *Homer* v. *Shelton*, 2 Met. 194, 206. *Hooper* v. *Bradbury*, 133 Mass. 303, 307. *Bullard* v. *Chandler*, 149 Mass. 532, 537. Our answer to this question also answers the thirteenth, with regard to the five thousand dollars given to Mrs. Joshua Lincoln for life by the twenty-second article, and the seventeenth, with regard to the like sum given by the thirty-fifth article to Charles H. Hall for life.

The eighth question concerns "the old Vose mahogany table" and the "chromo of Lilacs," mentioned in article 3 of the codicil. The gift is absolute in terms to Abby W. Hale, "if living at my decease," and the gift to her daughter Mary and other daughters successively is only in case Abby is not living at the death of the testatrix. But in article 4 there is a gift over after the decease of Abby and her four daughters, and taking this into account, and other indications in article 5, we are of opinion that Abby took only a life interest, and are inclined to assume that her daughters were to take successive life interests at her death, whenever it happened. The table and chromolithograph will be handed to the daughter Mary, that being the rule as to chattels of this sort. *Homer* v. *Shelton*, 2 Met. 194, 206. The Vose clock, by the terms of article fifth, goes the same way as the table. But we do not see our way to cutting down the gift of the articles mentioned in article 6 to a life interest. The gift to Abby is absolute in terms, and there is no alternative except in case Abby is not living at the death of the testatrix. The reference to article 3 suggests a similar disposition throughout, but there is no limitation over or other indication of an intent to look beyond Abby's death if the things once vested in her. The objects inquired about in the tenth question should be given to the representatives of Abby W. Hale.

The cologne stand mentioned in the eighth article is to be delivered to Harriet W. Kennedy, as are also the objects mentioned in the ninth article.

The two sums of five thousand dollars mentioned in the twenty-third and twenty-fourth articles are to be held in trust, as in the cases already explained. Questions as to the future disposition of the fund we do not answer. *Bullard* v. *Chandler*, 149 Mass. 532. *Quincy* v. *Attorney General*, 160 Mass. 431, 437.

The sixteenth question, as to the gift of a hundred dollars a year by article 31, "should there be one or more persons at my decease but now not known in my employ who may have faithfully served me at home," is answered by the finding that the only persons answering the description are Martha L. Collins and Sarah Ellen O'Brien. The sum will be paid to each of them.

The last two questions concern the last gift in the codicil:

" To each of my cousins in the first degree who is not remembered by a legacy from me in my will and codicils — to each of such cousins, I give the sum of twenty-five hundred dollars." We are of opinion that these words do not describe first cousins already deceased when the words were used, or the issue of such cousins, and therefore that such issue cannot take, whether the testatrix knew of the death of their ancestor or not. As there is no devise to their ancestor, they are not helped by Pub. Sts. c. 127, § 23. In cases like *Nutter* v. *Vickery*, 64 Maine, 490, although the ancestor was dead when the will was made, the will purported to make him or her a devisee. *Howland* v. *Slade*, 155 Mass. 415. *Sanderson* v. *Bayley*, 4 M. & C. 56. *Christopherson* v. *Naylor*, 1 Mer. 320, 326. *Parker* v. *Tootal*, 11 H. L. Cas. 143, 164, 166. *In re Musther*, 43 Ch. D. 569.

There is more difficulty in deciding whether those cousins who received a chromolithograph or a hat-stand were " remembered by a legacy " within the meaning of the codicil. There is such a want of proportion between the gifts of various small articles and the money, there is such an improbability that a first cousin, so far singled out as to receive a keepsake, should be excluded by the receipt of it from a benefit given to the least known of the class, that we are compelled to believe that legacy here is used in the sense of a pecuniary legacy, the meaning which the word most readily suggests to the unprofessional mind. It is argued with some plausibility that the testatrix used the word " bequests " in the same sense of pecuniary bequests in her will. She says, " I make no bequests to my relations because," etc., yet she gives all her personal effects other than money to her executors to be given to her friends, certainly including her relations.

*Decree accordingly.*